## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

CURTIS M. COLLINS,            )
                             )
            Plaintiff,        )
                             )    C.A. No. 05-739-SLR
        v.                    )
                             )    Jury Trial Requested
WARDEN RICK KEARNEY, *et al.*,  )
                             )
            Defendants.       )


## STATE DEFENDANTS' OPENING BRIEF
## IN SUPPORT OF THE MOTION FOR SUMMARY JUDGMENT


**DEPARTMENT OF JUSTICE**
**STATE OF DELAWARE**


*/s/ Erika Y. Tross*
Erika Y. Tross (#4506)
Deputy Attorney General
820 N. French Street, 6th Floor
Wilmington, DE  19801
(302) 577-8400
        Attorney for State Defendants

Dated: December 8, 2006

# **TABLE OF CONTENTS**

Table of Citations ………………………………………………............     ii

Nature and Stage of the Proceedings …………………………………………     1

Summary of the Argument ………………………………………………………     3

Statement of the Facts ……………………………………………………...     5

Argument ………………………………………………………………………..     8

      I.     Collins Cannot Support His Claims Against Defendants Kearney,     9
Milligan And Johnson Because They Were Not Personally Involved
In The August 6th Incident.

      II.    Officer Berezansky and Officer Daisey's Actions Were A Reasonable     12
Response To Plaintiff's Threatening And Aggressive Behavior And
Did Not Violate Plaintiff's Eighth Amendment Rights.

      III.   Defendant Chandler Did Not Fail To Protect Collins.     17

      IV.   State Defendants Did Not Refuse Collins Access To Medical     19
Treatment.

      V.    State Defendants Are Immune From Liability For Plaintiff's Claims.     20

Conclusion ………………………………………………………………………     24

## TABLE OF CITATIONS

### Cases

*Anderson v. Creighton,*
  483 U.S. 635, 640 (1987) …………………………………………...  22

*Anderson v. Liberty Lobby, Inc.,*
  477 U.S. 242, 248 (1986) …………………………………………...  8

*Bell v. Wolfish,*
  441 U.S. 520, 547 (1979) …………………………………………...  13

*Brookins v. Williams,*
  402 F.Supp.2d 508, 512 (D. Del. 2005) ……………………………….  9-10

*Carter v. Exxon Company USA,*
  177 F.3d 197, 202 (3d Cir. 1999) ……………………………………..  8

*Celetox Corp. v. Catrett,*
  477 U.S. 317, 322-23 (1986) ………………………………………..  8

*Dickens v. Taylor,*
  2006 WL 3190344, at *5 (D. Del. Nov. 3, 2006) ……………………..  17

*Doe v. Cates,*
  499 A.2d 1175 (Del. 1985) ……………………………………………  21

*Durmer v. O'Carroll,*
  91 F.2d 64, 67 (3d Cir. 1993) ………………………………………..  19

*Hafer v. Melo,*
  502 U.S. 21 (1991) ……………………………………………………  21

*Harlow v. Fitzgerald,*
  457 U.S. 800, 818 (1982) …………………………………………...  22

*Hudson v. McMillian,*
  503 U.S. 1 (1992) …………………………………………………...  12-13

*Pennsylvania v. Porter,*
  659 F.2d 306, 336 (3d Cir. 1981) ……………………………………..  9

*Polk County v. Dodson,*
  454 U.S. 312, 325 (1981) …………………………………………...  10

*Riley v. Jeffes,*
  777 F.2d 143, 145 (3d Cir. 1985) …………………………………...  9

*Rode v. Dellarciprete,*
  845 F.2d 1195, 1207 (3d Cir. 1988) …………………………………..  9

*Rouse v. Plantier,*
  182 F.3d 192, 197 (3d Cir. 1999) …………………………………...  19

*Seminole Tribe of Florida v. Florida,*
  517 U.S. 44 (1996) ………………………………………………….  21

*Vick v. Haller,*
  512 A.2d 249 (1986) ………………………………………………..  22

*Whitley v. Albers,*
  475 U.S. 312 (1986) ………………………………………………...  12-13

*Will v. Michigan Dept. of State Police,*
  491 U.S. 58, 71 (1989) ……………………………………………....  22

*Wright v. Snyder*,
     2002 WL 1821583, at *1 (D. Del. July 8, 2002) ……………………………    13-15, 17

**Statutes, Rules and Other Authority**

10 *Del. C.* § 4001 …………………………………………………………………...    21
42 *U.S.C.* § 1983 ………………………………………………………………….    *Passim*
Delaware Constitution Article I ………………………………………………….    21
Federal Rule of Civil Procedure 56(c) ………………………………………...    8

## NATURE AND STAGE OF THE PROCEEDINGS

Plaintiff Curtis M. Collins ("Collins" or "Plaintiff") is an inmate presently incarcerated at Delaware Correctional Center ("DCC"). At the time of filing his Complaint and the events alleged in the Complaint, Plaintiff was incarcerated at Sussex Correctional Institute ("SCI"). Collins is appearing *pro se* in this matter with leave to proceed *in forma pauperis*.

On October 21, 2005, Collins filed a Complaint pursuant to 42 U.S.C. § 1983 against Defendants Warden Rick Kearney, Sergeant James Chandler, and Officer Bradley Berezansky alleging that the defendants violated his constitutional rights while he was incarcerated at SCI by committing excessive force and assault and battery (the "Complaint"). (D.I. 2).

Over six months later, on May 12, 2006, Plaintiff moved for leave to amend his Complaint. (D.I. 20). In his Amended Complaint Plaintiff sought leave to add additional claims of verbal abuse, equal protection, unlawful seizure, refusal of medical treatment, and medical malpractice. Plaintiff also sought leave to add as defendants Officer Jeffrey Daisey, Officer Irvin Johnson, Officer Michael Milligan and two other individuals. Defendants Kearney, Chandler, and Berezansky did not oppose Plaintiff's Motion to Amend (D.I. 21) and on June 2, 2006, this Court granted Plaintiff leave to amend.

In a Memorandum Opinion and Order dated July 18, 2006, the Court dismissed Plaintiff's claims of verbal abuse, equal protection, unlawful seizure and medical malpractice pursuant to 28 U.S.C. §§ 1915 and 1915A. (D.I. 26). Therefore, the

1

only remaining claims against the Defendants are excessive force, assault and battery and refusal of medical treatment.

On September 1, 2006, after the initial discovery cut off date, Collins filed a request with the Court for extension of the discovery deadline.  (D.I. 34).  The Court granted Plaintiff's request and reset all deadlines in the case.  By the terms of the Court's amended scheduling order, discovery closed November 17, 2006, and opening briefs on case dispositive motions are due December 8, 2006.[1]  (D.I. 47).  This is State Defendants Warden Rick Kearney, Sergeant James Chandler, Officer Bradley Berezansky, Officer Michael Milligan, Officer Jeffrey Daisey, and Officer Irvin Johnson's (the "State Defendants") Opening Brief in Support of the Motion for Summary Judgment (the "Motion for Summary Judgment").

---

[1] The Court initially entered a scheduling order on April 25, 2006 setting August 25, 2006 as the date discovery would close and establishing the briefing schedule for dispositive motions.  (D.I. 19).

2

## SUMMARY OF THE ARGUMENT

I.      A Plaintiff filing a lawsuit pursuant to 42 U.S.C. § 1983 is required to show that the defendants had personal involvement in the alleged wrongs.  In this case, the record is clear that Warden Kearney and Officers Milligan and Johnson had no personal involvement in the alleged attack upon Collins.  Therefore, Collins cannot maintain an action against these Defendants and summary judgment is appropriate.

II.     Officer Berezansky and Officer Daisey's use of force on Collins was a reasonable response to Collins's threatening and aggressive behavior.  Collins cannot prove that the force used was excessive.  Therefore Collins cannot show that the State Defendants violated his Eighth Amendment rights and these claims cannot withstand summary judgment.

III.    Sergeant Chandler did not knowingly disregard a risk of substantial harm to Collins when he witnessed the Officers cap-stun and handcuff Collins.  Therefore Sergeant Chandler did not act with deliberate indifference and he cannot be held liable for failure to protect.

IV.     Collins received assessment and treatment for his injuries, if any, by the medical staff on the date of the alleged incident and shortly thereafter.  Therefore his allegations that the State Defendants refused him access to medical treatment are false and the Motion for Summary Judgment should be granted.

V.     The State Defendants are immune from liability in their official and individual capacities.   Thus Plaintiff's claims against the State Defendants cannot withstand summary judgment and the Motion should be granted.

## STATEMENT OF THE FACTS

They were short-staffed for breakfast in the chow hall of the Multi-Security Building ("MSB") that morning – August 6, 2005.  There were only three officers and one sergeant on duty – Sergeant James Chandler, Officer Bradley Berezansky, Officer Jeffrey Daisey and Officer Shawn Emerick.  (Exhibit "A" - Chandler Deposition at ¶10).  Sergeant Chandler was assisting in serving the inmates food.  The other officers were also assisting in maintaining order during the meal.

Shortly after chow began, in walked Inmate Curtis Collins.  (Exhibit "B" - Collins Deposition at 18:8-11).  Collins had a history of disciplinary problems when it came to meals in the chow hall.  On two occasions, while incarcerated at DCC, Collins had been written up for failing to obey an order and disorderly behavior.  (Exhibits "C" and "D").  During one meal, an officer had dismissed the chow hall and Collins continued to sit down and eat.  After being told it was time to leave, Collins replied, "Fuck you.  I don't hurry for no one.  Who the fuck do you think you are, I will sit here and eat my food until I'm done."  Collins received a write up for his behavior.  (Exhibit "D").

Collins had also had disciplinary problems in the chow hall at SCI.  On one particular occasion – not more than two months prior to August 6 – Collins was going through the chow line when he began arguing with one of the cart workers.  (Exhibit "E").  An officer present in the chow hall told Collins to move along but Collins became loud and disruptive.  When the officer advanced towards Collins to get him out of the chow hall, Collins stood up and started giving his food away.  He was then told to stop and dump his tray.  Collins replied, "Fuck that do what you want to do."  Collins

5

then turned to go towards the tier when he turned around toward the officer and stated, "Fuck you and you better not put your hands on me in and [sic] aggressive type manner." (Exhibit "E")

It was with this history that Collins walked into the chow hall on August 6, 2005.  After entering the chow hall, Collins grabbed his tray and went to look for a seat.  (Exhibit "B" - Collins Dep. 18:12-16).  Talking was not permitted in the chow hall and Collins was well aware of this rule.  (Exhibit "B" - Collins Dep. 20:11-13).  In fact, in his Complaint Collins states, "Now the Plaintiff understands and knows that there is no talking in the chow hall."  (Complaint, at Addendum to Statement of Claim, p1).  Collins, however, decided to ignore the rules, once again, and began talking to another inmate at one of the tables.  (Exhibit "B" - Collins Dep. 20:3-10).  At this point Officer Berezansky told Collins to stop talking or throw his food tray away.  (Exhibit "F" – Berezansky Incident Report).  Collins, however, continued to talk.  At that time Officer Berezansky told Collins to throw his food tray away and lock in.  (Exhibits "F", "G" and "H").  Shortly thereafter Collins got up to dump his tray.  (Exhibit "F").

After Collins dumped his tray he went to speak with Sergeant Chandler. (Exhibit "B" - Collins Dep. 21:16-18).  Collins contends that Sergeant Chandler ignored him.  (Exhibit "B" - Collins Dep. 17:4-7).  Sergeant Chandler, however, contends that he gave Collins a direct order to exit the chow hall.  (Exhibit "A" - Chandler Dep. at ¶4). Instead of leaving the chow hall, however, Collins, on his way out, turned toward Officer Berezansky and began cursing at him.  (Exhibit "I" – Disciplinary Hearing Decision). Specifically Collins turned and told Officer Berezansky that he should, "Shut his fucking

mouth." (Exhibit "I"). Collins then, with fists clenched, lunged at Officer Berezansky. (Exhibits "F", "G" and "H").

To prevent danger to himself and others, Officer Berezansky took out his cap-stun and sprayed Collins. (Exhibit "F"). Officer Berezansky then, with the assistance of Officers Daisey and Emerick, took Collins to the ground, handcuffed him and escorted him to the ASDA holding cell (Exhibits "F", "G" and "H") (the events beginning with Collins walking into the chow hall up until the time he was cap-stunned are referred to herein as the "August 6th Incident" or the "Incident").

In the ASDA cell a nurse assessed Collins for injuries. The nurse found "no noted injuries" and "no noted bruising." (Exhibit "J" – Nurse Incident Report). In her progress notes the nurse also indicated that Collins complained of rib pain but that he could not state exactly where the pain was located. (Exhibit "K" – Progress Notes"). She also noted that Collins complained of wrist pain but that there were "no noted red areas" and he was able to move his fingers freely. (Exhibit "K"). At a disciplinary hearing conducted less than a week later, Collins was found guilty of disorderly or threatening behavior. (Exhibit "I").

## ARGUMENT

Federal Rule 56(c) permits a Court to grant summary judgment, "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The United States Supreme Court holds that a court must enter summary judgment, "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

To obtain summary judgment the moving party must demonstrate that he has met the standards of Rule 56(c). *Carter v. Exxon Company USA*, 177 F.3d 197, 202 (3d Cir. 1999). The summary judgment standard requires that "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (emphasis in original). Thus only disputes that affect the outcome of a lawsuit will properly preclude the grant of summary judgment. *Id.*

"At the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249. In deciding a motion for summary judgment "the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented." *Id.* at 252.

8

I.          **Collins Cannot Support His Claims Against Defendants Kearney, Milligan And Johnson Because They Were Not Personally Involved In The August 6th Incident.**

To establish a civil rights claim under 42 *U.S.C.* § 1983 a plaintiff must prove:  (1) the conduct complained of was committed by a person acting under color of state law; and (2) the plaintiff was deprived of a right or privilege secured by the Constitution or the laws of the United States.  *Riley v. Jeffes*, 777 F.2d 143, 145 (3d Cir. 1985).  To support a claim for a civil rights violation a plaintiff must show that the defendant had *personal involvement* in the alleged wrongs.  *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988) (emphasis added).  A plaintiff must prove that the accused official "played an affirmative role in the deprivation of the plaintiffs' rights, i.e., there must be a causal link between the actions of the responsible officials named and the challenged misconduct."  *Pennsylvania v. Porter*, 659 F.2d 306, 336 (3d Cir. 1981).  In addition, this Court has held that, "Grievances are not enough to impute knowledge to [a] defendant."  *Brookins v. Williams*, 402 F.Supp.2d 508, 512 (D. Del. 2005) (quoting *Rode*, 845 F.2d at 1208)).

State Defendants Kearney, Milligan and Johnson had no personal involvement in the alleged attack on Collins.  Therefore Collins cannot maintain an action against these Defendants under § 1983 and summary judgment is appropriate.

### A.    Warden Kearney cannot be held liable based solely on his supervisory responsibilities.

Warden Kearney is the warden of SCI.  Collins has never personally met Warden Kearney.  (Exhibit "B" - Collins Dep. 9:21-23).[2]  Further Collins admits that he does not believe Warden Kearney attacked him or ever used physical force on him.  (Exhibit "B" - Collins Dep. 10-11:22-24, 1-11).[3]  Collins named Warden Kearney as a defendant solely because he is the warden of SCI and "because every time [he] wrote him a letter, [he] never got a response from him."  (Exhibit "B" - Collins Dep. 11:20-21).  It is well established, however, that section 1983 will not support a claim based on the theory of *respondeat superior* or vicarious liability.  *Polk County v. Dodson*, 454 U.S. 312, 325 (1981).  Further, grievance letters to Warden Kearney "are not enough to impute knowledge to [him]."  *Brookins*, 402 F.Supp.2d at 512 (quoting *Rode*, 845 F.2d at 1208).

It is clear that Warden Kearney had no personal involvement in the alleged attack upon Collins and was named solely because of his supervisory responsibility.  Therefore Collins cannot prove that Warden Kearney played an affirmative role in the

---

[2] Q (State Defendants' Attorney):  Can you give me a physical description of [Warden Kearney]?  Do you know his height?
  A (Collins):  No I have never seen him before.

[3] Q (State Defendants' Attorney):  Did Warden Kearney ever personally use force on you on August 6, 2005?
  A (Collins):  No.  Not him, but his officers did.
  Q:  Has he ever personally used physical force on you on any occasion?
  A:  No.
  Q:  Did he ever personally strike you or punch you?
  A:  No.
  Q:  Has he ever pushed you or shoved you?  And did he ever cap stun you?
  A:  No, but his officers did.
  Q:  So you agree that Warden Kearney never personally used physical force on you?
  A:  Right.

alleged deprivation of his rights and the claims against Warden Kearney should be dismissed.

### B. Officer Milligan cannot be held liable for the alleged attack because he was not on duty on the day of the Incident and was not involved.

Officer Milligan was not on duty at SCI on August 6, 2005 – the day of the Incident. (Exhibit "L" – Milligan Affidavit; Exhibit "M" – 8/6/05 Shift Assignment Roster). Clearly then there is no causal link between Officer Milligan and the Incident involving Collins. Collins falsely named Officer Milligan as a defendant. Because Officer Milligan had no involvement with the allegations in Collins's Complaint he should be dismissed from the case.

### C. Officer Johnson cannot be held liable for Collins's claims because he was not working in the chow hall during the Incident and was not involved.

Officer Johnson was on duty at SCI in the MSB on the date of the Incident. (Exhibit "M"). Officer Johnson, however, was not working in the chow hall during the time of the Incident. Rather Officer Johnson was working in the control room during the time of the Incident. (Exhibit "N" – Johnson Affidavit). Officer Johnson had no involvement in the incident that occurred in the chow hall as alleged in Collins's Complaint and should be dismissed from the case.

It appears evident that Collins knew that Officers Milligan and Johnson were not a party to the incident in the chow hall. In a grievance Collins filed on the same day as the Incident, Collins states that he was thrown to the floor by three (3) officers – not five as he names in his Complaint. (Exhibit "O" – Collins 8/6/05 Grievance Report). Further, the Incident Reports from the August 6th Incident were written only by Officers

Berezansky, Daisey and Emerick.  (See Exhibits "F", "G" and "H").  Collins then was aware that Officers Milligan and Johnson were not involved in the Incident.  Therefore he cannot support a claim against these Officers and the claims against them should be dismissed.

II.        **Officer Berezansky and Officer Daisey's Actions Were A Reasonable Response To Plaintiff's Threatening And Aggressive Behavior And Did Not Violate Plaintiff's Eighth Amendment Rights.**

The United States Supreme Court has addressed the use of force in prisons by correctional officials in two seminal cases – *Whitley v. Albers*, 475 U.S. 312 (1986) and *Hudson v. McMillian*, 503 U.S. 1 (1992).  In both *Whitley* and *Hudson*, the issues before the Court centered on whether prison officials properly used force to address a prison disturbance.  In *Whitley*, the Court held that the Eighth Amendment's prohibition against cruel and unusual punishment excludes from constitutional recognition *de minimis* uses of force, provided that the use of force is not of a sort "repugnant to the conscience of mankind." *Whitley*, 475 U.S. at 327.  The question a court must ask in deciding whether the force used by a prison official is unnecessary and wanton turns on "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm."  *Whitley*, 475 U.S. at 320-21 (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973)).  The Court added a further word of caution in *Hudson* – not every "malevolent touch by a prison guard gives rise to a federal cause of action."  *Hudson*, 503 U.S. at 9.

The Supreme Court instructs courts to carefully evaluate the situations prison officials face when using force.  In *Hudson*, the Court held that prison officials facing decisions regarding the use of force must often make decisions quickly.  Thus their

judgment should be given deference. "[O]fficials confronted with a prison disturbance must balance the threat unrest poses to inmates, prison workers, administrators, and visitors against the harm inmates may suffer if guards use force." *Hudson*, 503 U.S. at 6. Correctional officers must make decisions as to the use of force "in haste, under pressure, and frequently without the luxury of a second chance." *Whitley*, 475 U.S. at 320. Thus these officials must be "accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Bell v. Wolfish*, 441 U.S. 520, 547 (1979). It is against this backdrop of deference in the face of a tense, quick decision that a claim of excessive force must be viewed.

In determining whether a plaintiff's Eighth Amendment rights have been violated by the use of force, a court must consider five factors: 1) the need for the application of force; 2) the relationship between the need and the amount of force used; 3) the extent of the injury inflicted; 4) the extent of the threat to the safety of staff and inmates, as reasonably perceived by responsible officials on the basis of facts known to them; and 5) any efforts made to temper the severity of the forceful response. *Whitley*, 475 U.S. at 321.

Since the Supreme Court's decisions in *Whitley* and *Hudson*, this Court, on several occasions, has addressed inmate excessive force claims in the context of the use of cap-stun. In one case, with facts similar to the facts in Collins's case, the defendant correctional officers were conducting strip searches of inmates for drugs, weapons and contraband. *Wright v. Snyder*, 2002 WL 1821583, at *1 (D. Del. July 8, 2002) (attached hereto as Exhibit "P"). The plaintiff inmate refused to fully comply with

the orders of the correctional officers.  The correctional officers further asserted that the plaintiff lunged at one of the officers.  *Id.*  The correctional officers sprayed the inmate with cap-stun, handcuffed him and had him treated by the medical nurse on duty.  *Id.*

In reviewing the plaintiff's Eighth Amendment claim, the Court in *Wright* concluded that "plaintiff has not demonstrated a genuine issue of material fact as to whether defendants [correctional officers] used unnecessary, excessive force in response to plaintiff's conduct."  *Id.* at *3.  The court found that the inmate's refusal to obey an order coupled with the defendants' claim that the plaintiff had lunged at an officer, were all factors justifying the use of force.  *Id.*  Moreover, the court noted that the use of cap-stun and handcuffs was reasonably related to the need for force and that the correctional officers tempered the severity of their response by taking the inmate to see a nurse after he was sprayed.  *Id.*

Considering the holdings by the Supreme Court in *Hudson* and *Whitley* and the decision by this Court in *Wright* – in conjunction with the five factors set forth by the Supreme Court in *Whitley* – the use of force by the State Defendants in this case was reasonable and justified and did not violate Collins's rights for five reasons.

First, the Correctional Officers needed to use force in this case. Defendants assert that while in the chow hall Plaintiff turned toward Officer Berezansky and lunged toward him with his fists clenched.  (Exhibits "F", "G" and "H").  Although Collins does not admit to lunging toward Officer Berezansky, Collins does admit that he turned around to face Officer Berezansky and curse him.  In the Disciplinary Hearing Decision held on August 12, 2005 – six days after the Incident – Collins states, "I complied and dumped my tray and on my way out I asked him why are you talking to me

14

like that, he again stated to shut my fucking mouth.  As I was leaving the chow hall *I turned and told him he should shut his fucking mouth*."  (Exhibit "I") (emphasis added). In his deposition Collins also states, "When I was walking out the chow hall, C/O Berezansky said something real smart to me and I turned around to see what he said, you know."  (Exhibit "B" - Collins Dep. 17:8-9).  Thus Officer Berezansky was clearly in a situation where he was being threatened in an aggressive and hostile manner by Inmate Collins and needed to use force to restore discipline and maintain order.

Second, the amount of force that the Officers used was in proportion to the threat Inmate Collins posed. The Incident Reports from the August 6th Incident indicate that Collins was cap-stunned, taken to the ground by the Officers and handcuffed. (Exhibits "F", "G" and "H").  Such force is similar to that which was upheld by this Court in *Wright*.  *Wright*, 2002 WL 1821583, at *3 (Exhibit "P").  Therefore, the actions taken by the Officers were reasonably related to the need for force.

Third, Collins's injuries were not serious.  State Defendants admit that Collins was sprayed with cap-stun.  (Exhibits "F", "G" and "H").  But the nurse who assessed Collins immediately after the cap-stunning found that there were no noted injuries and no noted bruising.  (Exhibits "J" and "K").  Thus Collins suffered no serious injury.

Collins contends that he suffered a fractured rib as a result of the incident. (Complaint, at "Statement of Claim").  Although the State Defendants concede that Plaintiff's medical records indicate that he had a fractured rib on August 10, 2005, the record is not clear on when or how Collins received the fractured rib.  Collins has a history of receiving injuries from working out.  (Exhibits "Q" and "R").  Thus it is

possible that Collins suffered a fractured rib prior to the August 6th Incident as a result of working out.  Collins also could have caused his injury to himself while he was in the ASDA holding cell.  Further, while it is possible that Collins received the fractured rib during his handcuffing in the chow hall, Collins has no proof that the Officers caused the injury – the injury could have come from Collins's disorderly actions.

Fourth, Collins's aggressive posture and lunging toward Officer Berezansky was a threat to the safety of Officer Berezansky, as well as the other officers and inmates present.  Collins's behavior was clearly aggressive and threatening.  Thus it is reasonable to assume that Collins could have injured any of the other officers or inmates in the chow hall.  Further Collins's cursing at Officer Berezansky and lunging toward him could have easily started a riot with the other inmates, especially considering Collins's past behavior of trying to incite riots in the chow hall.  (See Exhibit "A" - Chandler Dep. at ¶4; Exhibit "E").  Collins's behavior was out of control and the Officers were justified in believing that Collins was a threat to the safety and security of the environment.

Finally, the Officers made efforts to temper the situation both before and after the use of force.  Prior to the cap-stunning, Officer Berezansky told Collins to either stop talking in the chow hall or dump his tray.  (Exhibit "F").  Collins, in a defiant manner, chose to continue talking.  (Exhibit "F").  At that point Collins was ordered to dump his tray and lock into his cell.  Collins then dumped his tray.  Instead of leaving, however, Collins escalated the situation by turning around to face Officer Berezansky, cursing at him and lunging toward him.  (Exhibits "F", "G", "H" and "I").  If Collins had decided to lock into his cell without further incident he would have never been cap-

16

stunned.  Collins, however, chose to turn around, curse at and lunge toward Officer
Berezansky.  Thus Collins escalated the situation and force was necessary to maintain
order and restore discipline and control.

Moreover, the Officers tempered the severity of the situation following the
cap-stunning by taking Collins to receive medical assessment and treatment from the
nurse on duty.  *See Wright*, 2002 WL 1821583, at *3.  The nurse found that Collins had
no noted injuries and no noted bruising.  (See Exhibits "J" and "K").

The cap-stunning of Collins by Officer Berezansky was a direct result of
Collins's threatening and aggressive behavior.  Moreover, the force used by the Officers
was applied in a good-faith effort to maintain and restore discipline in a situation that was
tense, hostile and quickly becoming out of control.  The Officers did not violate Collins's
Eighth Amendment rights and the Motion for Summary Judgment should be granted.

## III.        Defendant Chandler Did Not Fail To Protect Collins.

"To prevail on an Eighth Amendment failure to protect claim, a plaintiff is
required to show that (1) he is incarcerated under conditions posing a substantial risk of
serious harm (the objective element); and (2) prison officials acted with deliberate
indifference, i.e., that prison officials knew of and disregarded an excessive risk to inmate
health or safety (the subjective element)."  *Dickens v. Taylor*, 2006 WL 3190344, at *5
(D. Del. November 3, 2006) (citing *Farmer v. Brennan,* 511 U.S. 825, 833-34 (1994))
(attached hereto as Exhibit "S").

Plaintiff alleges in his Complaint that Sergeant Chandler failed to protect
him from the alleged attack and that Sergeant Chandler laughed at him while he was

being attacked.  (Complaint, at "Statement of Claim").  Plaintiff, however, cannot support
a failure to protect claim for several reasons.

First, Collins was not incarcerated under conditions that posed a
substantial risk of serious harm.  Rather Collins, by his own actions of threatening and
lunging toward Officer Berezansky, created a risk of harm.  Specifically, "Inmate Collins
was removed from his chowhall due to his trying to incite others to a riot.  Inmate Collins
was given a direct order by myself to exit the chow hall which he failed to do."  (Exhibit
"A" - Chandler Dep. at ¶4).  Thus it was Collins's actions that caused the risk of harm.

Second, Sergeant Chandler did not know of and disregard an excessive
risk to Collins's safety.  Collins was cap-stunned by Officer Berezansky.  He was then
taken to the ground, handcuffed and placed in a holding cell.  Thus there was no
excessive risk to Collins's safety.

Third, Sergeant Chandler was not in a position to offer assistance to
Collins.  Of the four officers on duty that day in the chow hall, three were forced to deal
with Collins because of his disorderly behavior.  This left only Sergeant Chandler to
"watch the other 30 or so high security inmates that were still in the chow hall at that
time."  (Exhibit "A" - Chandler Dep. at ¶10).  Therefore, Sergeant Chandler was not in a
position to assist Collins.

Finally, Sergeant Chandler did not laugh at Collins.  (Exhibit "A" -
Chandler Dep. at ¶1).  Further it is questionable whether Collins could prove that
Sergeant Chandler was laughing given that Collins had just been cap-stunned and was
face down and being handcuffed by the Officers.  (Exhibit "A" - Chandler Dep. at ¶1).

18

The facts of this case clearly reveal that Sergeant Chandler did not fail to protect Collins. Therefore, summary judgment as to this claim is appropriate.

## IV.    State Defendants Did Not Refuse Collins Access To Medical Treatment.

In addition to his excessive force and failure to protect claims, Collins alleges that the State Defendants refused him medical treatment. Prison systems must provide prisoners with adequate medical care. *Durmer v. O'Carroll*, 991 F.2d 64, 67 (3d Cir. 1993). "In order to succeed in an action claiming inadequate medical treatment, a prisoner must show more than negligence; he must show 'deliberate indifference' to a serious medical need." *Id.*

To demonstrate a cognizable claim of deliberate indifference under the Eighth Amendment a prisoner must prove that, (1) the defendant was deliberately indifferent to his medical needs; and (2) his medical needs were serious. *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999).

In this case, the State Defendants were not deliberately indifferent to Collins's medical needs. The Officers provided Collins with access to and treatment by the medical staff. Collins admits in his deposition that after he was placed in the holding cell he was seen by a nurse on the same day as the incident. (Exhibit "B" - Collins Dep. 48:16-18)[4] Further the Nurse's Incident Report states, "I/M assessed after capstun, no noted injuries." (Exhibit "J"). The nurse further wrote that there was "no noted

---

[4] Q (State Defendant's Attorney):  When was the first time you saw a nurse for your broken ribs?
  A (Collins):  That same day.

bruising." (Exhibit "J"). Thus the record reveals that Collins was assessed by a member of the medical staff shortly after he was cap-stunned.

Moreover, Plaintiff alleges that he was not seen by a doctor for over forty (40) days. (Complaint, at Addendum to Statement of Claim, p3). This, however, is false. Plaintiff's medical records reflect that he was seen by a member of the medical staff on August 8, 2005 – two days after the incident. (Exhibit "T"). Further, Collins received an X-ray and examination of his ribs by Dr. Mahendra Parikh of Mid-Delaware Imaging on August 10, 2005 – only four days after the incident. (Exhibit "U"). Collins's allegation that he was not examined by a doctor for over forty (40) days is a lie.

The record is clear – the State Defendants provided Plaintiff access to medical treatment. He was seen by a nurse on the same day that he was cap-stunned and the nurse found no injuries or bruising. Collins was again seen by the medical staff two days after the incident. Further, only four days after the incident, he was examined and X-rayed by a physician outside of SCI. Plaintiff cannot support his claim that the State Defendants refused him medical treatment and the State Defendants' Motion for Summary Judgment should be granted.

## V.    State Defendants Are Immune From Liability For Plaintiff's Claims.

Plaintiff seeks to hold the State Defendants liable in their official, as well as their individual capacities. The State Defendants however, are immune from such claims.

A.      **The State Defendants are immune from liability in the official capacities pursuant to the Doctrine of Sovereign Immunity and the Eleventh Amendment.**

To the extent that Collins seeks to hold the State Defendants liable in their official capacities for the alleged torts and/or constitutional violations, the Doctrine of Sovereign Immunity bars such claims. *See* Del. Const. Art. I., Sec 9; *Doe v. Cates*, 499 A.2d 1175 (Del. 1985). The State Defendants in this case clearly acted without gross or wanton negligence. Moreover their actions arose out of, and in connection with the performance of official discretionary duties – that is, the use of force against an inmate who was a threat to the safety of himself and others. 10 *Del. C.* § 4001. Thus the State Defendants are immune from Collins's tort and constitutional claims.

Further, to the extent Plaintiff's Complaint names the State Defendants in their official capacities, the State Defendants are immune from liability under the Eleventh Amendment. The Eleventh Amendment stands "for the constitutional principle that State sovereign immunity limit[s] the federal courts jurisdiction under Article III." *Seminole Tribe of Florida v. Florida*, 517 U.S. 44 (1996). The United States Congress can waive the state's sovereign immunity, and therefore, its Eleventh Amendment immunity through the Fourteenth Amendment, however, only a clear indication of Congress's intent to waive the state's immunity will produce this result. *Id.* No such clear intent can be found in 42 U.S.C. § 1983. In fact, Congress's intent appears to be to the contrary as the statute facially allows suits only to be brought against persons. 42 U.S.C. § 1983.

A suit against state officials in their official capacities is treated as a suit against the State. *Hafer v. Melo*, 502 U.S. 21 (1991). Under federal law, the State

21

Defendants in their official capacities are not "persons" for the purposes of 42 U.S.C. § 1983. *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989). Consequently, this Court lacks jurisdiction over the State Defendants in their official capacities, and the State Defendants are outside the class of persons subject to liability under 42 U.S.C. § 1983. Therefore summary judgment is appropriate.

> **B.    The State Defendants are immune from liability in their individual capacities pursuant to the doctrine of qualified immunity.**

Plaintiff also cannot maintain an action against the State Defendants in their individual capacities pursuant to the doctrine of qualified immunity. Government officials performing discretionary functions are immune from liability for damages, provided that their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). A right is clearly established when, "[t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). Furthermore, state defendants are entitled to qualified immunity where they acted in good faith, without gross or wanton negligence, in the performance of their discretionary duties. *Vick v. Haller*, 512 A.2d 249 (1986) (*aff'd in part and rev'd in part on procedural grounds*).

In this case, the Officers' actions were reasonable in light of the threat posed by Collins to the safety of himself, the Officers and the other inmates present. Moreover, Collins was a threat to the security of the institution as his actions could have incited a riot. Given the situation, the Officers used the minimum force necessary to

22

control Collins, maintain order and restore discipline.  Therefore, the Officers acted in good faith and did not violate Collins's rights.

Given that the State Defendants are immune from liability in their official and individual capacities, Plaintiff cannot maintain this action and the Motion for Summary Judgment should be granted.

## **CONCLUSION**

The events that occurred in the chow hall during breakfast on August 6, 2005 were tense, hostile and quickly becoming out of control.  Sensing the danger facing themselves, as well as the other inmates present, the Officers responded with the minimum amount of reasonable force necessary to control the situation.  The Officers' actions were reasonable and justified and they did not violate Collins's constitutional rights.  Therefore, State Defendants' Motion for Summary Judgment should be granted.

# CERTIFICATE OF SERVICE

I, Erika Y. Tross, Esq., hereby certify that on December 8, 2006, I caused

a true and correct copy of the attached ***State Defendants' Opening Brief In Support Of***

***The Motion For Summary Judgment*** to be served on the following individual in the

form and manner indicated:

**NAME AND ADDRESS OF RECIPIENT:**

Inmate Curtis M. Collins
SBI #00314128
Delaware Correctional Center
1181 Paddock Road
Smyrna, DE 19977


**MANNER OF DELIVERY:**

__One true copy by facsimile transmission to each recipient

✓Two true copies by first class mail, postage prepaid, to each recipient

__Two true copies by Federal Express

__Two true copies by hand delivery to each recipient


*/s/ Erika Y. Tross*
Erika Y. Tross (#4506)
Deputy Attorney General
Delaware Department of Justice
Carvel State Office Building
820 N. French Street, 6th Floor
Wilmington, DE 19801
302-577-8400