# EXHIBIT S (cont')

--- F.Supp.2d ----  
--- F.Supp.2d ----, 2006 WL 3190344 (D.Del.)  
(Cite as: --- F.Supp.2d ----)

Page 7

Committee "IBBC", Kramer, Counselor Kromka, Mike Little, IGC Lise Merson, Littleton Mitchell, Lt. Porter, Camille Pringle, Quick Response Team ("QRT") 1, QRT2, Anthony Rendina, John Ryan, Lt. Savage, Frank Scarpetti, Richard Eugene Seifert, Lt. Welcome, Staff Lt. B. Williams, and Zanda as frivolous and for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b)(1), and 42 U.S.C. § 1997e(c)(1). The Court will direct the Clerk's Office to correct the docket sheet by removing as a Defendant Ms. Hard. The Court will enter a Service Order on the remaining claims.

I. THE COMPLAINT

Plaintiff filed his original Complaint on April 1, 2004, against 53 defendants. Plaintiff alleges violations of the First, Fourth, Sixth, Eighth, and Fourteenth Amendments to the U.S. Constitution. (D.I. 2, at V.) The Complaint contains six counts, but many of the claims in Counts A and D are duplicative. Plaintiff seeks compensatory and punitive damages, and injunctive relief.

Count A alleges unlawful conditions of confinement, **excessive force**, failure to investigate, retaliation, denial of access to the courts, improper disciplinary proceedings, **failure** to **protect**, and inadequate medical care (D.I. 2, at I-XIII.) Count A is brought against Defendants Sgt. Teddy Tyson ("Tyson"), Deputy Warden Betty Burris ("Deputy Warden Burris"), Major Holman ("Holman"), Cpl. Kromka ("Cpl.Kromka"), Staff Lt. Bernie Williams ("Williams"), Lt. Savage ("Savage"), C/O Neal ("Neal"), C/O Jackson ("Jackson"), Major Cunningham ("Cunningham"), Capt. Belanger ("Belanger"), Sgt. Michael Moran ("Moran"), C/O Harris ("Harris"), Lt. Welcome ("Welcome"), Sgt. Evans ("Evans"), Lt. Secord ("Secord"), Capt. Sagers ("Sagers"), Deputy Warden McGuigan ("Deputy Warden McGuigan"), Staff Lt. Burton ("Burton"), Lt. Stanton ("Stanton"), QRT1, Nurse Courtney Doe ("Courtney Doe"), Nurse Cindy Doe ("Cindy Doe"), Lt. Harvey ("Harvey"), QRT2, C/O Rainey ("Rainey") and C/O Gardels ("Gardels").

*2 Count B alleges denial and lack of adequate medical care and unsanitary conditions. Id. at XIII-XXI. Count B is brought against Defendants Bureau Chief Paul Howard ("Bureau Chief Howard"), Commissioner Stan Taylor ("Commissioner Taylor"), First Correctional Medical ("FCM"), Nurse Administrator Brenda Holwerda ("Holwerda"), Courtney Doe, Cindy Doe, Warden Tom Carroll ("Warden Carroll"), Deputy Warden McGuigan, Camille Pringle ("Pringle"), Medical Director, and Dr. Arronburl, ("Dr.Arronburl").

Count C alleges a denial of legal access and right to counsel and is brought against Defendants Law Librarian Brian Engram ("Engram"), Savage, Mike Little ("Little"), John Ryan ("Ryan"), Cpl. Kromka, Commissioner Taylor, and Cpl. Oney ("Oney"). Id. at XXI-XXV. Count D alleges the imposition of retaliatory sanctions, **failure** to **protect**, and violations with respect to disciplinary procedures such as the denial of witnesses and the right to confrontation, and not being advised of prison disciplinary charges. Count D is brought against Defendants Williams, Savage, Rendina, Tyson, Moran, Cunningham, Belanger, Drake, Howard, Commissioner Taylor, Stanton, Evans, Sagers, Harvey, Burton, Deputy Warden McGuigan, and Warden Carroll. Id. at XXVI-XXIX. Count E alleges claims for failure to follow prison grievance procedures and is brought Defendants Cpl. Merson ("Merson"), Deputy Warden Burris, Assistant Bureau Chief Richard Seifert ("Seifert"), the Delaware Center for Justice, Shakeerah Haikal ("Haikal"), Pringle, Littleton Mitchell ("Mitchell"), Frank Scarpetti ("Scarpetti"), and FCM. Id. at XXIX-XXXI. Finally, Count F alleges discriminatory classification and unlawful loss of privileges, and is brought against Defendants Belanger, Cunningham, Counselor Kramer ("Kramer"), Counselor Tom Zanda ("Zanda"), IBCC, Jackson, and Rendina. Id. at XXXII-XXIV.

II. STANDARD OF REVIEW

[1] When a litigant proceeds *in forma pauperis,* 28 U.S.C. § 1915 provides for dismissal under certain circumstances. When a prisoner seeks redress from a government defendant in a civil action, 28 U.S.C. § 1915A provides for screening of the complaint by the Court. When a prisoner challenges prison conditions the screening provisions of 42 U.S.C. § 1997e(c)(1) apply. All three statutes provide that the Court may dismiss a complaint, at any time, if the action is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant immune from such relief. These sections require the Court to "dismiss an *in forma pauperis* claim if it determines that the claim is of little or no weight, value, or importance, not worthy of serious consideration, or trivial." *Deutsch v. United States,* 67 F.3d 1080, 1089 (3d Cir.1995).

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----
--- F.Supp.2d ----, 2006 WL 3190344 (D.Del.)
(Cite as: --- F.Supp.2d ----)

Page 8

[2][3] *Pro se* complaints are liberally construed in favor of the plaintiff. *Haines v. Kerner,* 404 U.S. 519, 520-521, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972). The Court must "accept as true factual allegations in the complaint and all reasonable inferences that can be drawn therefrom." *Nami v. Fauver,* 82 F.3d 63, 65 (3d Cir.1996)(citing *Holder v. City of Allentown,* 987 F.2d 188, 194 (3d Cir.1993)). An action is frivolous if it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams,* 490 U.S. 319, 325, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989). Additionally, a *pro se* complaint can only be dismissed for failure to state a claim when "it appears 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' " *Haines v. Kerner,* 404 U.S. 519, 520-521, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972)(quoting *Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)).

III. ANALYSIS

A. Persons-42 U.S.C. § 1983

*3 [4] Plaintiff raises claims against the IBCC, QRT1, QRT2, and the Delaware Center for Justice. To state a claim under § 1983, a plaintiff must allege that a person acting under color of state law deprived him of his rights. *See Daniels v. Williams,* 474 U.S. 327, 330 (1986). These Defendants are not "persons" subject to suit under 42 U.S.C. § 1983. *See Will v. Michigan Dep't of State Police,* 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989). If Plaintiff wishes to bring suit against a member of the IBCC or the Quick Response Teams then he must name each individual. Thus, the IBCC, QRT1, QRT2, and the Delaware Center for Justice are not proper defendants to this action, and therefore, the Court will dismiss all Plaintiff's claims against them pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b)(1).

B. Personal Involvement

Joe Hudson ("Hudson"), Lt. Porter ("Porter"), Ms. Havel "(Havel"), and Counselor Kromka are named as Defendants in the caption of this case. These four individuals are mentioned a second time in the "Section III. C. Parties," as additional defendants. However, the Court has read the Complaint numerous times and has found no other mention of these Defendants.

[5] A civil rights complaint must state the conduct, time, place, and persons responsible for the alleged civil rights violations. *Evancho v. Fisher,* 423 F.3d 347, 353 (3d Cir.2005) (citing *Boykins v. Ambridge Area Sch. Dist.,* 621 F.2d 75, 80 (3d Cir.1980); *Hall v. Pennsylvania State Police,* 570 F.2d 86, 89 (3d Cir.1978)). Additionally, when bringing a § 1983 claim, a plaintiff must allege that some person has deprived him of a federal right, and that the person who caused the deprivation acted under color of state law. *West v. Atkins,* 487 U.S. 42, 48, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988).

Because there are no allegations that Defendants Hudson, Porter, Havel, and Counselor Kromka had any personal involvement in depriving Plaintiff of a federal right, the Court will dismiss these Defendants pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b)(1).

C. Access to Courts

In Count A Plaintiff alleges that he was sent to isolation on February 22, 2002, and during that time he was a defendant in a criminal trial. (D.I. 2, at I.) Plaintiff alleges that the trial judge ordered **correctional officers** to return legal documents that had been taken from him. *Id.* Plaintiff alleges that unnamed **correctional officers** refused to give the documents to him, but that on March 22, 2002, Cpl. Kromka located the legal material and returned it to him. *Id.* Also, in Count C, Plaintiff alleges that because he is housed in Security Housing Unit ("SHU"), he does not receive the same type of paralegal services as non-SHU **inmates**.

[6][7] Plaintiff appears to allege an access to the courts claim against Cpl. Kromka. Denial of access to legal documents may constitute a violation of a prisoner's First Amendment right to petition the courts and/or Fourteenth Amendment due process rights. *Zilich v. Lucht,* 981 F.2d 694, 695 (3d Cir.1992). The allegations are, however, that Cpl. Kromka located and returned the legal documents to Plaintiff; not that he deprived Plaintiff of the legal materials. Accordingly, the Court concludes that count A fails to state a claim against Cpl. Kromka upon which relief may be granted, and therefore, the Court will dismiss the claim in Count A brought against Cpl. Kromka.

*4 [8] Plaintiff alleges in Count C that because he is housed in SHU he does not receive the same sort of access to the law library as **inmates** in less restricted

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----
--- F.Supp.2d ----, 2006 WL 3190344 (D.Del.)
(Cite as: --- F.Supp.2d ----)

Page 9

housing. As is well known, persons convicted of serious crimes and confined to penal institutions retain the right of meaningful access to the courts. Bounds v. Smith, 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977). This access "requires prison authorities to assist **inmates** in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." Id. at 828. This right "must be exercised with due regard for the 'inordinately difficult undertaking' that is modern prison administration." Thornburgh v. Abbott, 490 U.S. 401, 407, 109 S.Ct. 1874, 104 L.Ed.2d 459 (1989) (quoting Turner v. Safley, 482 U.S. 78, 85, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987). Thus, courts have been called upon to review the balance struck by prison officials between the penal institution's need to maintain security within its walls and the rights of prisoners. Howard v. Snyder, 389 F.Supp.2d 589, 593 (D.Del.2005).

All that is required is that Plaintiff have at least access to a prison paralegal or paging system by which to obtain legal materials. Abdul-Akbar v. Watson, 4 F.3d 195, 203 (3d Cir.1993) (in the case of segregated prisoners who do not have access to an institution's main law library, the law requires they must have some means by which documents and materials can be identified and furnished to them in a timely fashion). By Plaintiff's own admission, he is not being deprived of access to the law library. Rather, his access is limited. Accordingly, the Court will dismiss the access to courts law library claim alleged in Count C as frivolous and for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b)(1).

D. Eighth Amendment Claims

1. Conditions of Confinement

In Count A, Plaintiff also alleges that Defendants Neal and Jackson refused to serve breakfast in a sanitary manner by wearing protective headgear. (D.I. 2, at III.) This claim, liberally construed, alleges a condition of confinement claim.

[9][10] A condition of confinement violates the Eighth Amendment only if it is so reprehensible as to be deemed inhumane under contemporary standards or such that it deprives an **inmate** of the minimal civilized measure of the necessities of life. See Hudson v. McMillian, 503 U.S. 1, 8, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992); Wilson v. Seiter, 501 U.S. 294, 298, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991). The Court concludes that serving breakfast without "protective headgear" is not so reprehensible as to be deemed inhumane. Accordingly, the Court concludes that Plaintiff's conditions of confinement claim against Neal and Jackson is frivolous, and therefore the Court will dismiss this claim pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b)(1) and 42 U.S.C. § 1997e(c)(1).

2. Excessive Force/Failure to Protect

[11] The Complaint alleges that Plaintiff was the victim of Defendant C/O Harris' retaliation and harassment. Plaintiff appears to allege either an **excessive force** or **failure** to **protect** claim in Count A against Lt. Welcome when he alleges that Welcome allowed Harris to come into contact with Plaintiff when Harris handcuffed Plaintiff. (D.I. 2, at VI.) Plaintiff also alleges that Welcome told Harris to write a false report against Plaintiff and that he allowed Harris to taunt him and bump him with a cart when Plaintiff was handcuffed and shackled. Id.

*5 Although not clear, Plaintiff also appears to allege a **failure** to **protect** claim against Staff Lt. Burton in Count A. Plaintiff alleges that he had altercations with Sgt. Evans and that Staff Lt. Burton told Plaintiff to contact him if the problems continued. Id. at VIII. Plaintiff alleges that Burton ordered a shakedown of his cell after Plaintiff refused to allow Sgt. Evans and his staff to conduct a security count, but that no contraband was found, and Plaintiff returned to his cell. Id. Plaintiff also alleges that Burton ordered SHU officers to feed him. Id.

[12] To state a claim for **excessive force** under the Eighth Amendment, a prisoner must allege that force was applied maliciously or sadistically to cause harm. Whitley v. Albers, 475 U.S. 312, 320-21, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986). To prevail on an Eighth Amendment **failure** to **protect** claim, a plaintiff is required to show that (1) he is incarcerated under conditions posing a substantial risk of serious harm (the objective element); and (2) prison officials acted with deliberate indifference, i.e., that prison officials knew of and disregarded an excessive risk to **inmate** health or safety (the subjective element). See Farmer v. Brennan, 511 U.S. 825, 833-34, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994); see also Griffin v. DeRosa, 153 Fed.Appx. 851, 2005 WL 2891102 (3d Cir.2005).

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----
--- F.Supp.2d ----, 2006 WL 3190344 (D.Del.)
(Cite as: --- F.Supp.2d ----)

Page 10

The Court concludes that the allegations against Welcome and Burton do not rise to the level of a violation of the Eighth Amendment based on either the use of **excessive force** or a **failure to protect**. Accordingly, the Court will dismiss these claims pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b)(1).

To the extent Count D contains allegations of **excessive force** and **failure to protect** against Defendants Stanton, Evans, and McGuigan, the Court concludes that these claims are duplicative of those raised in Count A. (D.I. 2, at XXVII.) Plaintiff's allegations fail to rise to the level of an Eighth Amendment violation, and therefore, the Court will dismiss the claims in Count D brought against Defendants Stanton, Evans, and Deputy Warden McGuigan.

### 3. Medical Claim

In Count B, Plaintiff appears to allege that Pringle of the Delaware Center for Justice was deliberately indifferent to his medical needs. He alleges that his mother contacted Pringle regarding medical treatment he needed, and Pringle indicated that she would contact the Department of Correction ("DOC") regarding the matter. Id. at XVIII.

[13] The Eighth Amendment proscription against cruel and unusual punishment requires that prison officials provide **inmates** with adequate medical care. Estelle v. Gamble, 429 U.S. 97, 103-105, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). However, in order to set forth a cognizable claim, an **inmate** must allege (i) a serious medical need and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need. Estelle v. Gamble, 429 U.S. at 104; Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir.1999). A prison official is deliberately indifferent if he knows that a prisoner faces a substantial risk of serious harm and fails to take reasonable steps to avoid the harm. Farmer v. Brennan, 511 U.S. at 837. A prison official may manifest deliberate indifference by "intentionally denying or delaying access to medical care." Estelle v. Gamble, 429 U.S. at 104-05.

*6 The allegations against Pringle do not allege indifference to Plaintiff's plight. Rather, Plaintiff alleges that Pringle indicated she would take steps to contact the Delaware DOC. Moreover, it is not clear that Pringle is a state actor [FN1] which is a required for a § 1983 claim. Accordingly, the Court concludes that the claim against Pringle in Count B is frivolous, and therefore, the Court will dismiss this claim pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b)(1).

### E. Due Process

Several counts of the Complaint contain due process claims. Plaintiff was held in isolation from February 22, 2002 until March 2002. He alleges in Count D that he was given a "cursory" hearing by Williams and found guilty. (D.I. 2, at XXVI.) Plaintiff alleges in Counts A and D that after he was found guilty of a disciplinary charge in April 2002, Defendant Williams refused to send his appeal to Appeals Chief, Anthony Rendina. Id. at II-III. In Count D Plaintiff also alleges that Williams has a bias against **inmates**. Id. at IV.

In Count A, Plaintiff alleges that when he was sent to isolation in April 2002, Defendant Savage circumvented prison policy by holding a cursory disciplinary hearing after the isolation period had ended. Id. at III. Plaintiff alleges this was done to prevent the staying of sanctions pending appeal. Id. Plaintiff also alleges that when he was placed in isolation for 15 days as a result of a "soap throwing incident", Savage conducted a cursory hearing on the last day of his isolation and found Plaintiff guilty so that an appeal would be futile. Id. at IV.

Count A also contains allegations that Defendants Moran and Evans fabricated or wrote false disciplinary reports. Id. at V, VI. The alleged false reports authored by Moran concerned Plaintiff's refusal to leave his cell to shower or exercise. Id. The alleged report by Evans concerned a "coffee throwing" incident.

In Count C, Plaintiff alleges that he received a disciplinary report for possession of a letter which he contended was a "legal document". Id. at XXII-XXIII. Plaintiff explains that the letter was from a fellow **inmate** in response to an investigation by the U.S. Department of Justice. Plaintiff takes exception to the prison rule which precludes collaboration by prisoners on legal claims. Id. at XXIII. He alleges that Savage violated his constitutional rights when he did not return the letter following the disciplinary hearing, "even though prison policy mandates that confiscated legal papers be returned to owner". Id.

In Count D, Plaintiff alleges that Savage is biased against **inmates** during hearings and that he delays appeals. Id. at XXVI. More particularly, he alleges

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----
--- F.Supp.2d ----, 2006 WL 3190344 (D.Del.)
(Cite as: --- F.Supp.2d ----)

Page 11

that he was sent to isolation without a hearing where he remained from November 26 through December 11, 2003. *Id.* at XXVII. Plaintiff alleges that Savage waited until after Plaintiff served his sanction before holding a hearing on the last day of his isolation. *Id.* He alleges that Savage refused to send his appeal to the appeals officer. *Id.* Additionally, Plaintiff alleges that when he was sent to isolation from July 27, 2003, through August 11, 2003, for a tray throwing incident, Savage gave him a cursory hearing and found him guilty. *Id.* Finally, Plaintiff alleges that after he received a disciplinary report for barricading himself in his cell, Savage provided him a cursory hearing on October 29, 2003, a month after his release from isolation. *Id.* at XXIX.

*7 In Count D, Plaintiff also alleges that Appeals Officer Rendina violated his constitutional rights by supporting the hearing officers' findings. *Id.* Plaintiff also alleges that he complained to Rendina, Howard, and Taylor of Savage's actions and that they either ignored or condoned the actions of Savage. *Id.* at XXVII-XXVIII.

[14][15] While prisoners retain certain basic constitutional rights, including procedural due process protections, prison disciplinary hearings are not part of criminal prosecution, and an **inmate's** rights at such hearings may be curtailed by the demands and realities of the prison environment. *Wolff v. McDonnell,* 418 U.S. 539, 556-57, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974); *Young v. Kann,* 926 F.2d 1396, 1399 (3d Cir.1991). The requirements of due process in prison disciplinary hearings are that an **inmate** is entitled to (1) written notice of the charges and not less than 24 hours to marshal the facts and prepare a defense for an appearance at the disciplinary hearing; (2) a written statement by the fact finder as to the evidence relied on and the reasons for the disciplinary action; and (3) an opportunity "to call witnesses and present documentary evidence in his defense when to do so will not be unduly hazardous to institutional safety or correctional goals." *Wolff,* 418 U.S. at 563-71. A right to appeal disciplinary convictions is not within the narrow set of due process rights delineated in *Wolff. Garfield v. Davis,* 566 F.Supp. 1069, 1074 (E.D.Pa.1983); *Greer v. DeRobertis,* 568 F.Supp. 1370 (N.D.Ill.1983).

In reading Plaintiff's Complaint, the Court concludes that he was afforded basic due process protections as outlined in *Wolff.* Indeed, hearings were held and findings were made by the hearing officers. As discussed above, an appeal of a disciplinary conviction is not within the narrow set of due process rights delineated in *Wolff,* and therefore, the Court concludes that Plaintiff's regarding delay or impediment of his appeals fail to state a claim. As for Plaintiff's allegation that Savage violated his constitutional rights when he failed to return to a document Plaintiff describes on the one hand as "legal", and on the other hand as one from a fellow **inmate,** the Court notes that the Supreme Court has upheld restrictions on **inmate**-to-**inmate** communications. *See Shaw v. Murphy,* 532 U.S. 223, 121 S.Ct. 1475, 149 L.Ed.2d 420 (2001); *Turner v. Safley,* 482 U.S. 78, 89, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987). Savage did not violate Plaintiff's constitutional rights by not returning the letter at issue.

[16][17][18] As for Plaintiff's other due process allegations, the Court concludes that none are cognizable as § 1983 claims under the holding of *Wolff.* It is axiomatic that to be entitled to procedural due process protections as set forth in *Wolff,* a prisoner must be deprived of a liberty interest. *See Wolff,* 418 U.S. at 557-558. The Due Process Clause itself confers no liberty interest in freedom from state action taken "within the sentence imposed." *Sandin v. Conner,* 515 U.S. 472, 480, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995) (quoting *Hewitt v. Helms,* 459 U.S. 460, 468, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983)). Further, state created liberty interests protected by the Due Process Clause are generally limited to restraints on prisoners that impose an "atypical and significant hardship on the **inmate** in relation to the ordinary incidents of prison life." *Griffin v. Vaughn,* 112 F.3d 703, 706 (3d Cir.1997) (quoting *Sandin,* 515 U.S. at 484). Finally, neither Delaware law nor DOC regulations create a liberty interest in a prisoner's classification within an institution. *See* Del.Code. Ann. tit. 11, § 6529(e).

*8 [19] Plaintiff complains that on several occasions he was placed in isolation and a hearing was not held until either after his release from isolation or towards the end of his confinement there. He also complains that Defendants' actions resulted in the filing of false disciplinary charges and related disciplinary sanctions. In the Court's view, these claims, without more, do not violate Plaintiff's constitutional rights under the Due Process Clause. *See Smith v. Mensinger,* 293 F.3d 641, 653-54 (3d Cir.2002). Plaintiff's due process rights are triggered by a deprivation of a legally cognizable liberty interest which "imposes atypical and significant hardship on the **inmate** in relation to the ordinary incidents of prison life." *Sandin v. Conner,* 515 U.S. at 484.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.