IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CURTIS M. COLLINS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 05-739-SLR |
| | ) |
| WARDEN RICK KEARNEY, | ) |
| SGT. JAMES CHANDLER, | ) |
| C/O BEREZANSKY, C/O MILLIGAN, | ) |
| C/O DAISEY, C/O IRVIN JOHNSON, | ) |
| NURSE HELEN WHITLEY, and | ) |
| DR. ROBERTA BURNS, | ) |
| | ) |
| Defendants. | ) |

Curtis M. Collins, Delaware Correctional Center, pro se Plaintiff.

Eileen Kelly and Erika Yvonne Tross, Deputy Attorneys General, Delaware Department of Justice, Wilmington, Delaware. Counsel for Warden Rick Kearney, Sgt. James Chandler, C/O Berezansky, C/O Milligan, C/O Daisey, and C/O Irvin Johnson.

**MEMORANDUM OPINION**

Dated: July 18, 2007
Wilmington, Delaware

ROBINSON, District Judge

## I. INTRODUCTION

Presently before the court is a motion for summary judgment filed by State defendants Warden Rick Kearney ("Warden Kearney"), Sgt. James Chandler ("Chandler"), C/O Berezansky ("Berezansky"), C/O Milligan ("Milligan"), C/O Daisey ("Daisey"), and C/O Irvin Johnson "(Johnson"), and plaintiff Curtis M. Collins' ("Collins") response thereto. (D.I. 76, 77, 84, 87, 88) For the reasons set forth below, the court will grant in part and deny in part the State defendants' motion for summary judgment .

## II. PROCEDURAL AND FACTUAL BACKGROUND

Plaintiff filed this § 1983 lawsuit alleging excessive force, assault and battery, verbal abuse, equal protection, unreasonable seizure, refusal of medical treatment, and medical malpractice as a result of an incident that occurred on August 6, 2005, at the Sussex Correctional Institute ("SCI"), Georgetown, Delaware. On July 20, 2006, the court dismissed the verbal abuse, equal protection, unreasonable seizure, and medical malpractice claims. (D.I. 26) The claims that remain are excessive force (including a failure to protect claim), assault and battery, and deliberate indifference to serious medical needs.

The following facts are related to plaintiff's allegations. Plaintiff testified during his deposition that he was at the SCI chow hall on August 6, 2005. (D.I. 77, at B16) He believes defendants Johnson, Milligan, Daisey, Chandler, and Berezansky were present that morning. (D.I. 77, at B18) The shift assignment sheet for the day in question lists those on duty in the Multi-Security Building ("MSB") as Chandler, Chaffinch, Emerick, Berezansky, Daisey, Johnson, Day, Adams, and Tyre. (D.I. 77, at M) Milligan's

affidavit states he was not on duty at SCI on August 6, 2005. (D.I. 77, at L) Johnson's affidavit states that, on the day in question, he was on duty in the control room of the MSB, not in the MSB chow hall during breakfast. (D.I. 77, at N)

A prison rule provides that no talking is allowed in the chow hall, and plaintiff was aware of the rule. (D.I. 77, at B20, B37) The tables were full so plaintiff asked some inmates to slide down, whereupon Berezansky told plaintiff to shut-up and to dump his food tray. (D.I. 77, at B16) Plaintiff stated that he tried to explain to Berezansky the situation and, again, Berezansky told plaintiff to shut-up and to throw away his food tray. Id. Plaintiff stated he obeyed the order, got up and threw away his food tray. Id. Plaintiff states he next spoke to Chandler about what transpired between plaintiff and Berezansky, but Chandler did not acknowledge plaintiff. Id. at B17.

As he was leaving the chow hall, plaintiff states Berezansky said something "real smart;" plaintiff turned around and Berezansky came charging at him. Id. Plaintiff states he did not lunge, jump towards, walk, or step in the direction of Berezansky. Id. at B22. He also states he did not turn towards Berezansky with his hands in a fist, with clenched hands, raised hands, or clenched teeth. Id. at B22-23. According to plaintiff, he was then assaulted and punched in the face by Berezansky. Id. at B22-23. Plaintiff states he did nothing to protect himself. Id. at B31. Berezansky states in his written deposition that plaintiff approached him, lunged at him, was capstunned, taken to the ground, and cuffed. (D.I. 84, Berezansky dep. at answer 7)

Berezansky's incident report states that plaintiff walked towards him with his hands in a fist and with clenched teeth. (D.I. 77, at F) The incident reports of Daisey

2

and Officer Emerick[1] state that, as plaintiff exited the chow hall, he turned around in a threatening manner, raised his fist in a fighting stance, and lunged towards Berezansky. (D.I. 77, at F, G) Plaintiff stated that Berezansky, Daisey, and Emerick lied in their reports. (D.I. 77, at B25-28)

According to plaintiff, Daisey, Johnson, and Milligan became involved, pushed plaintiff inside the chow hall, slammed him against the wall, threw him to the floor, handcuffed him, sprayed him with two cans of pepper spray, and starting punching and kicking him while he was handcuffed and on the floor. Id. at B22-23, 31-32. In Chandler's written deposition answer, he stated he was in the chow hall during the incident "because with three other officer[s] involved in the situation[,] I was the only one left to watch the other 30 or so high security inmates that were still in the chow hall at that time." (D.I. 77, at A) Chandler stated that, by the time he reached the back of the chow hall, plaintiff had been capstunned and handcuffed. (D.I. 77, at A) Chandler states it was impossible for plaintiff to see him, because plaintiff was face down and capstun had been used which impaired plaintiff's vision. (D.I. 77, at A) Plaintiff states that while face down, he could see "just a little bit, from the corner of his eyes." (D.I. 85, at ¶ "page 18")

Plaintiff states he was taken to a holding cell and was seen by a nurse[2] who told

[1]Officer Emerick is not currently a defendant. Plaintiff has moved for leave to amend the complaint to add Emerick as a defendant. (D.I. 67, 102)

[2]The record indicates plaintiff was seen by defendant nurse Helen Whitley ("Whitley"). (D.I. 77, at J) She assessed plaintiff and noted no injuries or bruising. Whitley has been served but has not answered or otherwise appeared. (D.I. 80) Similarly, Dr. Burns has been served but has not answered or otherwise appeared. (D.I. 96)

3

him there was nothing wrong. Id. at B17-18. Plaintiff complained of rib pain, but could not identify the location of the pain. (D.I. 77, at K) He submitted a request for medical services the same day as the incident, stating he needed to see a doctor as soon as possible because he believed he had broken ribs. (D.I. 85) Plaintiff received medical treatment on August 8, 2005, which included pain medication and an order for x-rays. Id. On August 10, 2005, x-rays were taken of the left rib cage and front chest, and they revealed a non-displaced fracture of the anterior, left ninth rib. (D.I. 77, at K) On August 17, 2005, a physician wrote an order for plaintiff to be seen regarding his fractured ribs. (D.I. 85) Plaintiff was seen on September 22, 2005. (D.I. 56, at D13) X-rays taken on November 23, 2005 indicated healing fractures of the left anterior eighth and ninth ribs with considerable callous and periosteal new bone formation, but with fracture lines still present. (D.I. 85) Approximately one year later, x-rays were taken of the area revealing an old fracture of the left eighth and ninth ribs. (D.I. 59)

Disciplinary charges were brought against plaintiff for disorderly or threatening behavior. (D.I. 77, at I) He pled "not guilty". Id. During his disciplinary hearing, plaintiff explained that, as he was leaving the chow hall, he asked Berezansky why he was cussing him, and Berezansky told plaintiff to "shut the f— up" for a second time. Id. Plaintiff turned to Berezansky and told him to "shut his f—ing mouth" and, at that time, Berezansky ran towards plaintiff, sprayed him, took him to the floor and starting kicking plaintiff. Id. Plaintiff testified during his deposition that he turned around because he thought Berezansky had given him another direct order, and he did not recall cursing Berezansky. (D.I. 77, B29)

On the same day as the incident, plaintiff filed a grievance which sought a

4

reprimand of all the officers, however, there is no grievance mechanism available for the disciplining of staff. (D.I. 77, at B43, O)

## III. DISCUSSION

### A. Standard of Review

A court shall grant summary judgment only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of proving that no genuine issue of material fact exists. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 n.10 (1986). "Facts that could alter the outcome are 'material,' and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct." Horowitz v. Federal Kemper Life Assurance Co., 57 F.3d 300, 302 n.1 (3d Cir. 1995) (internal citations omitted). If the moving party has demonstrated an absence of material fact, the nonmoving party then "must come forward with 'specific facts showing that there is a genuine issue for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e)). The court will "view the underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion." Pennsylvania Coal Ass'n v. Babbitt, 63 F.3d 231, 236 (3d Cir. 1995).

The mere existence of some evidence in support of the nonmoving party, however, will not be sufficient for denial of a motion for summary judgment; there must be enough evidence to enable a jury reasonably to find for the nonmoving party on that issue. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). If the

5

nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to judgment as a matter of law. See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

Defendants Kearney, Milligan, and Johnson move for summary judgment on the basis that they were not personally involved in the August 6th incident. Berezansky and Daisey move for summary judgment on the basis that their actions were a reasonable response to plaintiff's behavior on the day in question and, therefore, did not violate plaintiff's Eighth Amendment rights. Chandler moves for summary judgment on the basis that plaintiff cannot support a failure to protect claim against him. All the State defendants move for summary judgment on the bases that they were not deliberately indifferent to plaintiff's medical needs and they are entitled to sovereign immunity and qualified immunity.

## B. Personal Involvement

State defendants contend that Kearney, Milligan, and Johnson had no personal involvement in the alleged attack on plaintiff and, therefore, summary judgment is appropriate. Under Third Circuit case law, "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs" to be liable. Sutton v. Rasheed, 323 F.3d 236, 249 (2003) (quoting Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988).

The facts do not support any personal involvement by Kearney. Plaintiff stated Kearney was not present in the chow hall when he was injured on August 6, 2005. Further, plaintiff stated he named Kearney as a defendant because Kearney had rejected letters plaintiff had written to him concerning his treatment by the officers.

6

Plaintiff also stated he has no documentation that Kearney knew corrections officers were beating inmates or that Kearney was aware of the August 6, 2005 incident.

State defendants argue that Kearney cannot be held liable based solely on his supervisory responsibilities.  To the extent plaintiff claims Kearney is liable on the basis of supervisory liability, his claim against Kearney fails. The Court of Appeals for the Third Circuit set forth the standard for imposing liability against a supervisor under  §  1983 in Sample v. Diecks, 885 F.2d 1099 (3d Cir. 1989).  In Sample, the Third Circuit noted that "a 'person' is not the 'moving force [behind] the constitutional violation' of a subordinate, unless that 'person'. . .has exhibited deliberate indifference to the plight of the person deprived."  885 F.2d at 1117-18.  In order to establish supervisory liability, plaintiff must identify a specific supervisory practice or procedure that defendant failed to employ, that the existing custom or practice without that specific practice or procedure created an unreasonable risk of harm, that defendant was aware that this unreasonable risk existed, that defendant was indifferent to that risk, and that plaintiff's harm resulted from defendant's failure to employ that supervisory practice or procedure. Id. at 1118.

The record is clear that Kearney is named as a defendant solely because of his supervisory position.  Notably, there is nothing before the court to indicate that Kearney was aware of any risk to plaintiff or that he was deliberately indifferent to that risk. Indeed, plaintiff acknowledged during his deposition that he has no documentation that Kearney knew corrections officers were beating inmates or that Kearney was aware of the August 6, 2005 incident.

Berezansky is the only defendant whom plaintiff is certain was involved in the

7

August 6, 2005. Plaintiff stated during his deposition he "believes" defendants Johnson, Milligan, Daisey, and Chandler were present in the chow hall the morning of August 6, 2005. (D.I. 77, at B18). Plaintiff stated that after he was handcuffed and while face down on the floor, he could see "just a little bit, from the corner of his eyes." (D.I. 85, at ¶ "page 18")

Affidavits and supporting documents do not support plaintiff's position that Johnson and Milligan were present during the August 6, 2005 incident. According to the incident reports submitted by the parties, the persons involved on August 6, 2005 include defendants Daisey and Berezansky, as well as Correctional Officer Emerick. None of the incident reports refer to defendants Johnson or Milligan. Additionally, Milligan's affidavit states he was not working on August 6, 2005, and Johnson's affidavit states he was not working in the chow hall on August 6, 2005.

After reviewing the record, the court finds that plaintiff has not produced sufficient evidence to enable a jury to reasonably find for him on the issue of whether Kearney, Milligan, and Johnson violated his Eighth Amendment rights. Therefore, the court will grant the motion for summary judgment as to defendants Kearney, Milligan, and Johnson.

## C. Excessive Force

Defendants Berezansky and Daisey argue that, because their actions were a reasonable response to plaintiff's threatening and aggressive behavior, they did not violate plaintiff's Eighth Amendment rights. When analyzing an excessive force claim under the Eighth Amendment, the court must determine "whether the force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for

8

the very purpose of causing harm." Whitley v. Albers, 475 U.S. 312, 320-21 (1986) (citations omitted). Use of force is actionable under § 1983 when it exceeds "that which is reasonable and necessary under the circumstances." Davidson v. O'Lone, 752 F.2d 817, 827 (3d Cir. 1984). The court must determine whether the force was applied in good faith by weighing the following factors: (1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of the injury inflicted; (4) the threat reasonably perceived by the responsible officials; and (5) the efforts made to temper the severity of a forceful response. Davis v. Carroll, 390 F.Supp.2d 415, 419 (D. Del. 2005) (citing Hudson v. McMillian, 503 U.S. 1, 7 (1992)).

State defendants refer to a number of cases to support their position that the force used was reasonable, in light of their version of the facts that plaintiff refused to obey an order and lunged at a corrections officer. They further argue that the use of capstun and handcuffs was reasonably related to the need for force and the severity of the response was tempered by taking plaintiff to see a nurse after he was sprayed.

State defendants acknowledge that plaintiff does not admit to lunging towards corrections officers, although he does admit to turning around towards Berezensky. It is evident there is an issue of fact whether plaintiff lunged towards Berezensky, as State defendants claim, or whether plaintiff turned towards Berezensky as plaintiff testified. State defendants theorize plaintiff could have injured other officers or easily started a riot and, consequently, the corrections officers were justified in believing plaintiff was a threat to the institution. The record does not indicate plaintiff injured anyone or that he started a riot.

9

To support their position that the actions taken were reasonably related to the use of force, State defendants note the use of capstun and handcuffs has been considered reasonable by other courts. State defendants do not mention plaintiff's testimony that, in addition to being handcuffed and capstunned and while lying face down and handcuffed, he was kicked and punched. Nor do they mention plaintiff's testimony that Berezensky punched plaintiff in the face. Finally, State defendants argue plaintiff's injuries were not serious, while acknowledging plaintiff sustained a fractured rib. State defendants take the position that the record is not clear how plaintiff sustained the fractured rib, and point to plaintiff's history of being injured while working out. (D.I. 79, at Q, R) They advance a theory that, perhaps during a workout, plaintiff suffered a fractured rib prior to the August 6, 2005 incident. The medical records submitted indicate that in 2004, plaintiff injured his shoulder and, in November 2005, he continued to complain of rib pain.

The facts of record, however, demonstrate that plaintiff complained of a rib injury on the day of the incident, sought medical treatment on the day of the incident, and has consistently advised medical personnel that his rib pain commenced after the altercation with the corrections officers on the day of the incident. Moreover, it was only four days later that x-rays indicated plaintiff had sustained a broken rib, and later x-rays indicated that two ribs had been fractured. Moreover, the facts viewed in the light most favorable to plaintiff include the fact that Berezensky punched plaintiff in the face. Later, while laying on the floor, after he had been capstunned and with his arms handcuffed behind his back, plaintiff was kicked and punched by defendant correction officers; these acts resulted in not one, but two, fractured ribs. Therefore, the court will deny the motion for

10

summary judgment as to the issue of excessive force, as there are genuine issues of material fact as to whether the force used by Berezensky and Daisey was reasonable under the circumstances.

### D. Failure to Protect

Defendant Chandler moves for summary judgment on the failure to protect claim, arguing that plaintiff was not incarcerated under conditions that posed a substantial risk of serious harm and, further, that he did not know of and disregard an excessive risk to plaintiff's safety. To prevail on an Eighth Amendment failure to protect claim, a prisoner must establish that the prison official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837 (1994). To survive summary judgment, plaintiff is required "to produce sufficient evidence of (1) a substantial risk of serious harm; (2) Chandler's deliberate indifference to that risk; and (3) causation." Hamilton v. Leavy, 117 F.3d 742, 746 (3d Cir. 1997).

Plaintiff testified during his deposition that he named Chandler as a defendant because he was present during the August 6, 2005 incident, and saw everything that happened. (D.I. 77, B41) Plaintiff testified that Chandler did not assault him, but he could have stopped the whole thing. Id. at B16. Plaintiff argues that Chandler should be held accountable for his failure to protect him because, in Chandler's position as sergeant, he could have prevented the situation by utilizing the "rank that the prison promoted him with." (D.I. 88, at 4) Chandler argues that he was not in a position to help plaintiff because he was required to stay in the chow hall to watch the other 30 or

11

so high risk inmates. Chandler also testified, however, that when he reached the back of the chow hall, plaintiff had been capstunned and handcuffed. Chandler went on to state it was impossible for plaintiff to see him, because plaintiff was face down and capstun had been used which impaired plaintiff's vision.

Plaintiff's testimony is that he was kicked and punched while on the ground, after he had been capstunned and handcuffed. Chandler's testimony is that he was present while plaintiff was face down, handcuffed and after capstun had been used. Plaintiff's testimony indicates it was at this point in time that he was kicked and punched by corrections officers. There remains a genuine issue of material fact whether Chandler failed to protect plaintiff in light of the fact that Chandler's description of when he saw plaintiff is virtually identical to plaintiff's description during the time he was allegedly being kicked and punched. Therefore, the court will deny Chandler's motion for summary judgment on the issue of failure to protect.

## E. Medical Needs Claim

State defendants move for summary judgment on plaintiff's medical needs claim, arguing that plaintiff was provided with medical treatment following the incident of August 6, 2005. The Eighth Amendment proscription against cruel and unusual punishment requires that prison officials provide inmates with adequate medical care. Estelle v. Gamble, 429 U.S. 97, 103-105 (1976). In order to set forth a cognizable claim, an inmate must allege (i) a serious medical need and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need. Estelle v. Gamble, 429 U.S. at 104; Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999). A prison official is deliberately indifferent if he knows that a prisoner faces a substantial risk of serious

12

harm and fails to take reasonable steps to avoid the harm. Farmer v. Brennan, 511

U.S. at 837). A prison official may manifest deliberate indifference by "intentionally

denying or delaying access to medical care." Estelle v. Gamble, 429 U.S. at 104-05.

However, an inmate's claims against members of a prison medical department are not

viable under § 1983 where the inmate receives continuing care, but believes that more

should be done by way of diagnosis and treatment and maintains that options available

to medical personnel were not pursued on the inmate's behalf. Estelle v. Gamble, 429

U.S. at 107.

The medical records indicate that plaintiff was examined by a nurse while in a

holding cell immediately following the incident. Two days later, plaintiff was seen by a

physician and x-rays were ordered and plaintiff continued to received medical treatment

for his fractured ribs and complaints of pain. The medical records do not support

plaintiff's position that defendants were deliberately indifferent to his medical needs.

Therefore, the court will grant the motion for summary judgment on the medical needs

issue.

## F. Immunity

### 1. Sovereign Immunity

State defendants contend that, under the Eleventh Amendment, they cannot be

held liable for any alleged action taken by them in their official capacities. The Eleventh

Amendment bars suits against states, see Bolden v. SEPTA, 953 F.2d 807, 813 (3d Cir.

1991), and claims made against state officials in their official capacities are treated as

claims made against the state itself. Will v. Michigan Dep't. of State Police, 491 U.S.

58, 71 (1989). A state, however, may waive its immunity under the Eleventh

13

Amendment. Such waiver must be in the form of an "unequivocal indication that the

State intends to consent to federal jurisdiction that otherwise would be barred by the

Eleventh Amendment." Ospina v. Department of Corr., 749 F.Supp. 572, 578 (D. Del.

1990) (quoting Atascadero State Hosp. v. Scanlon, 473 U.S. 234, 238 n.1 (1985)). The

State of Delaware has not consented to plaintiff's suit or waived its immunity under the

Eleventh Amendment. To the extent plaintiff alleges claims against State defendants in

their official capacities, State defendants are entitled to summary judgment.

### 2. Assault and Battery

The complaint seeks recovery against State defendants pursuant to Delaware

law under the theories of assault and battery. State defendants argue they are entitled

to immunity in their official capacity from such claims under the Delaware State Tort

Claims Act. See 10 Del. Code § 4001. Section 4001 exempts state employees from

civil liability for their actions if their conduct (i) arose out of and in connection with the

performance of an official duty which involved the exercise of discretion, (ii) was

undertaken in good faith and with the belief that the public interest would best be served

by their actions, and (iii) was performed without gross or wanton negligence. 10 Del.

Code. § 4001. Here, the facts are disputed as to whether State defendants acted in

good faith and without gross or wanton negligence during the August 6, 2005 incident

with plaintiff. Therefore, because of the disputes of material fact, summary judgment on

this issue must be denied.

### 3. Qualified Immunity

In addition to arguing that the force used was reasonable, defendants contend

that they cannot be held liable in their individual capacities under the doctrine of

14

qualified immunity. Government officials performing discretionary functions are immune from liability for civil damages when their conduct does "not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). The test for qualified immunity, outlined in Saucier v. Katz, 533 U.S. 194 (2001), is whether, taken in the light most favorable to the party alleging injury, 1) the facts show the officers' conduct violated a constitutional right, and 2) the constitutional right was clearly established, based on the specific context of the case. Id. at 201. The Third Circuit has interpreted the second step of this inquiry as follows: "If it would not have been clear to a reasonable officer what the law required under the facts alleged, he is entitled to qualified immunity." Bennet v. Murphy, 274 F.3d 133, 136-37. "If the requirements of the law would have been clear, the officer must stand trial." Id. at 137.

State defendants argue the officers' actions were reasonable in light of the threat posed by plaintiff to himself, the officers and other inmates present. Also, they argue plaintiff was a threat to the security of the institution because his actions could have incited a riot. Plaintiff testified during his deposition that Berezensky assaulted him and he did not fight back. He also testified that while face down, on the ground, handcuffed after being capstunned, he was kicked and punched by the corrections officers. State defendants never addressed plaintiff's assertions he was punched by Berezensky and kicked and punched by all the corrections officers present. Nonetheless, the State defendants argue they used the minimum amount of force necessary under the circumstances. There is a genuine issue of material fact as to whether the force was applied in a good faith effort to maintain or restore discipline or maliciously and

15

sadistically for the very purpose of causing harm. Additionally, there is a genuine issue
of material fact as to whether Chandler failed to protect plaintiff from harm. Therefore,
at this time, the court will deny the motion for summary judgment on the issue of
qualified immunity.

## IV. CONCLUSION

Based upon the foregoing analysis, the court will grant in part and deny in part
the State defendants' motion for summary judgment. The court will grant summary
judgment as to defendants Warden Kearney and Officers Milligan and Johnson. The
court will deny summary judgment as to defendants Berezensky, Daisey, and Chandler.
The court will also grant summary judgment as to the medical needs issue and Eleventh
Amendment immunity. An appropriate order will issue.

16