IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CURTIS M. COLLINS, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Civ. No. 05-739-SLR ) |
| SGT. JAMES CHANDLER, ,<br>C/O BRADLEY BEREZANSKY, and<br>C/O JEFFREY DAISY, | ) ) ) ) |
| Defendants. | ) ) |

**MEMORANDUM ORDER**

At Wilmington this ___ day of October, 2009, having considered defendant Berezansky's motion for new trial, and the papers submitted in connection therewith;

IT IS ORDERED that defendant's motion (D.I. 197) is denied for the reasons that follow:

1. **Background.**[1] Plaintiff, a prison inmate, initiated this 42 U.S.C. § 1983 action alleging that defendants used excessive force against him, in violation of his Eighth Amendment rights in the chow hall at the Sussex Correctional Center ("SCI"). The defendants were correctional officers who worked at SCI. A jury trial was conducted on March 24 - 27, 2009. The jury returned a unanimous verdict against defendant Berezansky ("defendant") on the excessive force claim.[2] (D.I. 189) The jury awarded plaintiff $5,000 in compensatory and $35,000 in punitive damages.

2. On April 16, 2009, defendant moved for a new trial pursuant to Fed. R. Civ. P. 59, on two grounds: (1) plaintiff's witness blurted out inadmissible hearsay testimony; and (2) during his closing argument, plaintiff's counsel shifted the burden of proof,

---

[1]The procedural history is well-known to the parties and not relevant to the issues at bar.

[2]The jury found that defendant Daisy did not use excessive force against plaintiff and that defendant Chandler did not acquiesce in such conduct. (D.I. 189)

thereby improperly influencing the jury. (D.I. 197, 206) The motion is fully briefed.

    3. **Standard of Review.** In pertinent part, Fed. R. Civ. P. 59(a), provides that

> a new trial may be granted to all or any of the parties and on all or part of the issues (1) in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States.

Although Rule 59 does not specify the grounds on which a new trial may be granted, new trials are commonly granted in the following situations: (1) where the jury's verdict is against the clear weight of the evidence, and a new trial must be granted to prevent a miscarriage of justice; (2) where newly-discovered evidence surfaces that would likely alter the outcome of the trial; (3) where improper conduct by an attorney or the court unfairly influenced the verdict; or (4) where the jury's verdict was facially inconsistent. *See Zarow-Smith v. N.J. Transit Rail Operations, Inc.*, 953 F. Supp. 581, 584 (D. N.J. 1997) (citations omitted); *TA Instruments, Inc. v. Perkin-Elmer Corp.*, 277 F. Supp. 2d 367, 373 (D. Del. 2003); *Lightning Lube, Inc. v. Witco Corp.*, 802 F. Supp. 1180, 1186 (D. N.J.1992), *aff'd* 4 F.3d 1153 (3d Cir.1993).

    4. The decision to grant a new trial rests entirely within the sound discretion of the trial court. *Allied Chemical Corp. v. Daiflon, Inc.*, 449 U.S. 33, 36 (1980); *Wagner v. Fair Acres Geriatric Ctr.*, 49 F.3d 1002, 1017 (3d Cir.1995). A court, however, should be cautious to not replace the jury's view of evidence for its own. *Power Integrations, Inc. v. Fairchild Semiconductor Intern., Inc.*, 589 F. Supp. 2d 505, 508 (D. Del. 2008). In considering whether a new trial is appropriate under Rule 59, the "court need not view the evidence in the light most favorable to the verdict winner, a distinction from similar motions under Rule 50." *McMillan v. Weeks Marine, Inc.*, 478 F. Supp. 2d 651, 655 (D. Del. 2007). A new trial should only be granted where "a miscarriage of justice would result if the verdict were to stand, the verdict cries out to be overturned, or where the verdict shocks the conscience." *Williamson v. Consolidated Rail Corp.*, 926 F.2d 1344, 1352 (3d Cir. 1991); *Montgomery County v. MicroVote Corp.*, 152 F. Supp. 2d

784, 795 (E.D. Pa. 2001); *Barbee v. Southeastern Pennsylvania Transp. Authority*, 2007 WL 675851, *2 (E.D. Pa. 2007). The movant has the burden of proving that a new trial is warranted. *Weeks Marine*, Inc., 478 F. Supp. 2d at 655.

4. **Hearsay Testimony**. As his first ground for a new trial, defendant asserts that the jury heard inadmissible hearsay evidence blurted out by plaintiff's witness, William Devonshire ("Devonshire"). Specifically, Devonshire testified about a conversation he had with an unidentified person wherein defendant threatened Devonshire to not testify at trial. Defendant further alleges that, by eliciting this testimony, plaintiff's counsel breached an informal agreement between the parties.[3]

5. Although defendant challenges a portion of testimony, an examination of Devonshire's testimony, immediately preceding the objection, is essential for context.[4]

---

[3]Defendant submits that Devonshire's trial testimony must be viewed along with his deposition testimony, wherein Devonshire refused to identify the inmate who told him that defendant said it would be in Devonshire's best interest not to testify at trial. Shortly before the expiration of discovery deadlines, defense counsel asked plaintiff's counsel if he intended to "elicit this testimony about the threat from this unidentified person at trial." Because plaintiff's counsel agreed not to bring out this testimony, defendant did not move to compel the individual's identity or to exclude the testimony. (D.I. 206 at 6 - 7)

Plaintiff counters that the issue of intimidation permeated the trial and pre-trial proceedings. Specifically, immediately preceding the commencement of trial, there were a number of allegations of intimidation of his witnesses by defendant, and others, that caused plaintiff to request a continuance of trial because the witnesses refused to testify, to wit, they "asserted they had reason to fear retaliation from prison guards." (D.I. 161, 162) Plaintiff withdrew the continuance request after SCI supervisory officials assuaged the witnesses' concerns. (D.I. 163) Plaintiff's counsel acknowledges that he agreed "not to go into these [intimidation by defendant] issues at trial, other than the 'snitch' comment by defendant." (D.I. 208 at 24, n.2) To that end, "Devonshire was prepped for his testimony and the areas that we would not be asking him about." (*Id.*) It appears, however, that Devonshire misunderstood counsel's question; counsel "did not intend to inquire into the allegations of intimidation, other than the 'snitch' comment." (*Id.*)

Considering the court's unique position to assess any prejudice caused to a party, the court finds there was nothing to suggest that plaintiff's counsel intentionally violated any pretrial stipulation or acted in bad faith. *See e.g., United States v. Universal Rehabilitation Services (PA), Inc.*, 205 F.3d 657, 665 (3d Cir. 2000). The record suggests that Devonshire confused the line of questioning and blurted out his response.

[4]The section objected to by defendant is highlighted in bold.

3

Devonshire was plaintiff's first witness.[5] Devonshire testified defendant punched and dragged plaintiff out of the chow hall. Then, defendant kicked, hit and sprayed plaintiff with mace. After describing the incident, the testimony proceeded as follows:

> [PLAINTIFF COUNSEL]: Since August 6, 2005, has Berezansky said anything else to you about the incident.?
> [DEVONSHIRE]: To me, personally, no.
> [DEFENSE COUNSEL]: Objection. I think we're going to need a sidebar.
> (sidebar conference held as follows)
> THE COURT: What's the objection?
> [DEFENSE COUNSEL]: The objection is on relevance. I'm not sure where this is going, but I have a good idea that he's going to ask him about comments he claims Berezansky made about him being a snitch,

---

> [5]Devonshire was plaintiff's first witness to testify. The first witness called was Bobby Price ("Price"). After the courtroom deputy asked:
> Do you solemnly swear that the testimony you will give the court and the jury in the case now pending before it will be the truth, the whole truth, and nothing by the truth, so help you God?
> [PRICE]: No.
> THE COURT: Does that mean you don't want to swear on the Bible? Will you affirm, or are you just telling us -
> [PRICE]: That means I don't want to testify now.
> THE COURT: You don't want to testify?
> [PRICE]: Right.
> THE COURT: I guess we'll take the jury out for a moment, and you may be seated.
> (the jury was excused for a short recess)
> THE COURT: All right. The court and the parties went to a lot of trouble to get you here today. I assume you agreed - -
> [PRICE]: I know that. I tried to contact them last Friday. I've been made real uncomfortable. I've been put in a position I'm not comfortable with and I don't want to be here.
>                       *         *         *
> [PLAINTIFF COUNSEL]: Is there something that has changed in the last week that has changed your mind about wanting to testify?
> [PRICE]: Yes, there has.
> [PLAINTIFF COUNSEL]: Could you explain what that is?
> [PRICE]: Comments. And I had someone talk to me about, you know, I shouldn't be involved in this, and it's not in my best interests, and that I have to work about correctional officers, and that, you know, no one is going to want me to have my job because they're going to be paranoid about what the - - you know, they said I'm in a position where I'm going to see things and hear things that I'm going to have to keep quiet about. You know, I'm just uncomfortable with this, real uncomfortable.

(D.I. 213 at 99-101)

which were entirely irrelevant to what his testimony is, his credibility
of what happened on this day, and it's extremely prejudicial.
[PLAINTIFF COUNSEL]: Your Honor, it's not irrelevant. I apologize for
interrupting.
[DEFENSE COUNSEL]: I'm finished.
[PLAINTIFF COUNSEL]: It is not irrelevant. It goes directly to an admission
by Mr. Berezansky that when you call someone a snitch, you have to
snitch about something. So I believe it's his impression that is relevant
and it goes to show that that (sic) something wrongful happened that
day in question.
[DEFENSE COUNSEL]: In Mr. Devonshire's deposition, we discussed the
snitch comment with him, and he actually said himself he doesn't
understand what snitch means since you can only snitch on another
inmate, so I don't think that would possibly be an admission. He
himself said it.
THE COURT: Well, let me make sure I understand when this comment
was made. When this comment was allegedly made?
[PLAINTIFF COUNSEL]: Approximately a month ago, your Honor.
THE COURT: And was everybody aware he was going to be testifying
to this?
[PLAINTIFF COUNSEL]: I believe so, your Honor.
[DEFENSE COUNSEL]: Yes.
THE COURT: Well, it seems to me as though it might have some relevance,
and I guess given everything that is going on with Mr. Price and everything,
I'm uncomfortable not letting this kind of information in, unless there's
some other reason why you think it should not come in.
[DEFENSE COUNSEL]: I just don't see what issue it could possibly be relevant
to. He himself in his deposition said he doesn't understand why somebody
would call him a snitch if he's testifying against an officer. He said this
in his deposition. It does not make any sense because you can only be
a snitch if you are testifying against another inmate. That's what he said.
So what could it possibly be related to?
[PLAINTIFF COUNSEL]: First of all, your Honor, we are not going to ask Mr.
Devonshire to elaborate and try to explain what he thinks the snitch comment
means. We will leave that to the jury. Common sense says when you are
snitching on someone, you're telling on them. I think it does have probative
value and we would like to explore it.
THE COURT: Well, it seems to me that regardless of what - -
it seems to me as though it does have probative value and the
objection is overruled. I will allow the question.
[PLAINTIFF COUNSEL]: Thank you.
(end of sidebar conference)
[PLAINTIFF COUNSEL]: Mr. Devonshire, when we left off, I believe I
just asked if Officer Berezansky has ever said anything
around you about the incident?
[DEVONSHIRE]: Around me, yes.
[PLAINTIFF COUNSEL]: Okay. When did this take place?
[DEVONSHIRE]: This took place the day we were supposed to make the first
deposition. I don't remember exactly what date it was.
[PLAINTIFF COUNSEL]: Okay. Maybe a month or two ago?
[DEVONSHIRE] Yes.
**[PLAINTIFF COUNSEL]: And what did you hear Berezansky say:**

5

> **[DEVONSHIRE]: I didn't hear him say nothing. It was told to me that it was in my best interests not to testify.**
> **[DEFENSE COUNSEL]: Objection, Your Honor.**
> **THE COURT: The objection is sustained.**
> [PLAINTIFF COUNSEL]: Mr. Devonshire, did you ever hear in the chow hall Officer Berezansky say something about you and Mr. Weikel?
> [DEVONSHIRE]: Yes.
> [DEFENSE COUNSEL]: Objection. Leading.
> THE COURT: I think we're just trying to get to the issue that we discussed, so the objection is overruled.
> [PLAINTIFF COUNSEL]: And that's the conversation I'm asking you about.
> [DEVONSHIRE]: Yes.
> [PLAINTIFF COUNSEL]: What did you hear that day?
> [DEVONSHIRE]: I heard him ask a certain - - - another inmate if he's going to go over there and sit next to them two snitches.
> [PLAINTIFF COUNSEL]: And where did that inmate then go to sit?
> [DEVONSHIRE]: Right next to us.

(D.I. 213 at 118-122)

6. Before the commencement of the second day of trial, defendant raised the issues of the snitch comment again. Specifically,

> [DEFENSE COUNSEL]: This had to do with the snitch comment that was elicited in testimony yesterday, and I don't really know how best to address it, but I didn't know, and I didn't know it didn't come out this way in the deposition either. I didn't know until after the conversation about the snitch comment came out in front of the jury that it was all hearsay and that the guy didn't hear it himself from the defendant. He heard it from somebody else, who I don't even know and can't cross examine. . . .
> I didn't know until after the conversation was there and he said, well, did you actually hear Berezansky say that? No. Somebody else came over and told me that he said it. That was way too late, way too late. And that's the way that that inadmissible hearsay evidence was elicited.
> [PLAINTIFF COUNSEL]: Your Honor, I think part of the problem was . . . there were two conversations that took place. I think Devonshire misunderstood my question the first time I asked it and he thought I was asking about intimidation-type comments that he did hear from another inmate.
>     *    *    *
> We're happy to strike and willing to strike the previous portion of the testimony, where he was talking about what another inmate said to him about the intimidation comments, if that's the portion that counsel had a problem with, though, frankly the cat is kind of out of the bag there.

(D.I. 214 at 5-7) Although the court agreed to review the transcript of the testimony prior to making a decision, defense counsel doubted whether "striking it is good enough. I'm not even sure that a jury instruction would take care of something so

6

prejudicial that should not have come in in the first place." (*Id.* at 7) Accordingly, the issue was taken under advisement and the statement remained in the record.

6. Having reviewed the facts and circumstances of this case in light of the aforementioned legal principles, the court concludes, in its discretion, that Devonshire's inadvertent statement does not warrant a new trial. Devonshire testified that he did not hear defendant "say anything;" instead, an unidentified person told Devonshire that it was in his best interests not to testify. Devonshire did not identify defendant as that person and, specifically, stated that defendant did not say anything. Moreover, it is unlikely that the jury's verdict against defendant was affected by this testimony as it was unrelated to the issue at bar, i.e., whether defendant used excessive force against plaintiff. *See e.g., Holmes v. City of Massillon*, 78 F.3d 1041, 1046 (6th Cir. 1996).

7. **Closing Argument.** Defendant submits that he was denied a fair trial because plaintiff's counsel's closing argument shifted the burden of proof. Defense counsel made the following objection:

> [Defense counsel]: Your Honor, can we have a quick sidebar?[6]
> (sidebar conference held as follows)
> [Defense counsel]: I don't know how long he has been shifting the burden, but it has been a decent amount of testimony he has just shifted the burden. He's going through again and again all the people that we did not call.
> THE COURT: I think that is a problem, but I think you can correct it. All right?
> [Plaintiff's counsel]: All right.
> THE COURT: I hope that you do.
> (end of sidebar conference)
> [Plaintiff's counsel]: Now, make no mistake, ladies and gentlemen, we do have the burden through the witnesses that we have called. We have proven to you that it is more likely than not that excessive force took place that day. So it comes back to, who do you believe? Whose story has stayed consistent.

(D.I. 215 at 11-12) Because defendant's opening and reply briefs do not identify

---

[6]Defendant's request for a sidebar came about in the middle of plaintiff's closing. (D.I. 215 at 11) Plaintiff's closing constituted 24 and 1/4 pages. (D.I. 215)

portions of the closing that, purportedly, shifted the burden, the court presumes the statements immediately preceding defense counsel's objection are at issue:

> Now, we've talked about our witnesses, our two independent witnesses. Let's talk about the defense witness. But before we move on to them, before we move on to who they called, let's talk about a little bit about who they did not call. We heard all of this testimony about how in the chow hall, there were up to 30 people, 30 people. How many witnesses who don't have a stake in the outcome of this case did they call? Zero. None. They had 30 chances to call someone to the stand to say, hey, guys, members of the jury, it was Curtis Collins that attacked. They had 30 chances to call someone to the stand to testify.
> [Defendant's counsel]: Your Honor, can we have a quick sidebar?

(*Id.* at 11)

9. As the record reflects, the court agreed that the statement was objectionable and ordered counsel to correct the problem, which he did, immediately following the sidebar. No additional objection was raised. Plaintiff's counsel clearly articulated that plaintiff had the burden of proof in the case.

10. The court repeatedly explained the burden of proof concept from the initial stages though the end of the trial. After the jury panel was selected, the court read aloud preliminary instructions that included a summary of the case, explanations of the burden of proof[7] and of evidence,[8] and a description of the course of the trial.[9]

---

[7]In pertinent part, this preliminary instruction provided:
Burden of Proof. This is a civil case. Plaintiff has the burden of proving his claims by what is called a preponderance of evidence. That means that plaintiff has to produce evidence which, when considered in the light of all the facts, leads you to believe that what plaintiff claims is more likely true than not. To put it differently, if you were to put plaintiff's and defendants' evidence concerning these topics on the opposite sides of a scale, the evidence supporting the plaintiff's claims would have to make the scales tip somewhat on his side.
(D.I. 185 at 3)

[8]This instruction reads, "[c]ertain things are not evidence: (1) Statements, arguments, and questions by lawyers are not evidence." (D.I. 185 at 2)

[9]This charge provides:
Course of the Trial. Once the trial has begun, the attorneys will have

8

Following closing arguments, the court read aloud and provided copies of the final instructions to the jury.[10] In much greater detail, the jury was advised, among other things, of the applicable law, and repeatedly reminded that it was plaintiff's burden to prove, by a preponderance of the evidence, his claims.[11] Moreover, the court read a specific charge regarding statements of counsel.[12] "It is a basic tenet of our jurisprudence that a jury is presumed to have followed the instructions the court gave

---

three opportunities to talk to you. The first opportunity is the opening statement. During the opening statements, the attorneys will introduce their respective stories to you. **As I have already instructed, however, what the lawyers say is not evidence. It will be up to you to determine whether the evidence - the testimony of the witnesses and the admitted documents - supports what the lawyers say in their opening statements.** (*Id.* at 5) (emphasis added)

[10] The preliminary instructions were also distributed to the jury.

[11] For example, (1) "Plaintiff must prove the following elements by a preponderance of the evidence . . . ." (D.I. 187 at 18); (2) "In order to establish his claim for violation of the Eighth Amendment, plaintiff must prove that defendants . . . " (*Id.* at 19); (3) "In deciding whether plaintiff has proven this claim . . . " (*Id.*); (4) "With respect to the third element of his claim, plaintiff must prove that defendants' . . . ." (*Id.* at 20); (5) "Plaintiff must show that the injury would not have occurred without the defendants' act or omission." (*Id.* at 24); (6) "Plaintiff has the burden of proving his claims and damages by what is called a preponderance of the evidence . . . ." (*Id.* at 5); (7) "The lawyers' statements and arguments are not evidence. Their questions and objections are not evidence." (*Id.* at 6); and (8) "Make your decision based only on the evidence, as I have defined it here, and nothing else." (*Id.* at 7)

[12] The charge provides:
Statements of Counsel. A further word about statements and arguments of counsel. Attorneys' statements and arguments are not evidence. Instead, their statements and arguments are intended to help you review the evidence presented. If you remember the evidence differently from the attorneys, you should rely on your own recollection. The role of attorneys is to zealously and effectively advance the claims of the parties they represent within the bounds of the law. An attorney may argue all reasonable conclusions from the evidence in the record. It is not proper, however, for an attorney to state an opinion as to the [truth] or falsity of any testimony or evidence. What an attorney personally thinks or believes about the testimony or evidence in a case is not relevant, and you are instructed to disregard any personal opinion or belief concerning testimony or evidence that an attorney has offered during opening or closing statements, or at any other time during the course of the trial.
(D.I. 187 at 13)

9

it." *United States v. Givan*, 320 F.3d 452, 462 (3d Cir. 2003); *Citizens Financial Group, Inc. v. Citizens Nat. Bank of Evans City*, 383 F. 3d 110, 133 (3d Cir. 2004). There is nothing of record to indicate that the jury did other than weigh the conflicting evidence carefully, believed plaintiff and his witnesses and rendered a verdict that is supported by the evidence and its credibility determinations.

11. Further, the court finds that plaintiff's counsel's comments were not so improper as to warrant a new trial. *See e.g., Dixon v. International Harvester Co.*, 754 F.2d 573, 585 (5th Cir.1985) (To justify a reversal based on improper comments of counsel, the conduct must be such as to gravely impair the calm and dispassionate consideration of the case by the jury.).

_____
United States District Judge